## 32676, 33025. ST. JOHN'S MELKITE CATHOLIC CHURCH v. COMMISSIONER OF REVENUE; and vice versa.

HALL, Justice.

This case involves constitutional challenges to most of the provisions of the "1977 Bingo Act." Ga. L. 1977, p. 1164.[1] The trial court found that sections 2, 3 and 7 were unconstitutional restrictions on the right to operate bingo games, and that section 10 was invalid insofar as it penalized the failure to comply with sections 2, 3 and 7. Appellants have challenged sections 4, 5, 8, 10 and 11 in this appeal. Cross appellants have appealed the rulings of invalidity.

Each of the appellants is a nonprofit organization which has conducted bingo games. Except for the Fellowship Club of Savannah, all of the appellants have sponsored bingo games through the services of The Club Room, Inc., a for-profit corporation. The Club Room, Inc. was in fact operating the games for appellants. The Club Room hired all bingo personnel (who were nominally placed on the payroll of the nonprofit organizations), chose the type of games played and prizes given, ran the games, kept books of account for the nonprofit groups, and ran advertisements of the games using the names of the nonprofit groups.

Appellants used the services of the Club Room to avoid the inconvenience of running bingo games. By hiring "professionals" the organizations could obtain bingo proceeds with no effort by their own members. The Club Room received large rental payments for use of its facilities and services. The profits of the games in the Club Room amounted to about $130,000 in the five-month period for which evidence was obtained. Of this, $98,000 went to the nonprofit groups and $32,000 went to the Club Room.

The data for the Fellowship Club of Savannah

---

[1] All section references are to this law unless otherwise indicated. This law is referred to herein as the 1977 Act, or the Act.

indicates that the Club received only $253.48 in proceeds from their games. In contrast, the financial statement shows payments of $500 in legal fees (plus $518 in legal fees unpaid), $5,114.70 in rent paid to the wife of the president of the club, and $900 in additional rent.

The resolution of this case does not depend on the facts. However, these facts illustrate the type of bingo operations which developed prior to the 1977 Act.

Before reaching the merits of the challenges to this Act we will consider, sua sponte, whether appellants have standing to raise all of the issues they argue.

1. Appellants challenged the limitation on bingo licenses to organizations which have been in existence less than two years. Ga. L. 1977, p. 1164, at 1165, § 3. In order to have standing to challenge this, at least one of the appellants would have to be in existence less than two years, and only the Counselor's Club, Inc. qualifies. The Counselor's Club, Inc. was formed in April, 1977, after this action was filed. All of its officers and members are attorneys in the law firm which represents the plaintiffs. A deposition shows that this corporation has conducted no operations other than bingo games and the prosecution of this lawsuit. The Counselor's Club, Inc. admittedly was created for the purpose of challenging this law.

There are no genuinely adverse legal positions at stake in this challenge to the two-year requirement. There are no actual plans to turn this corporation into a functioning organization pursuing its stated nonprofit purposes. Where a corporate plaintiff is lacking in substance and was created for the sole purpose of pursuing a lawsuit, we would be rendering an advisory opinion if we decided an issue it alone can argue. We will not decide the constitutionality of a law where no justiciable case or controversy is presented. Cf. *Northeast Factor &c. Co. v. Jackson,* 223 Ga. 709, 710-711 (157 SE2d 731) (1967) and cits.; Bartemeyer v. Iowa, 85 U. S. 129, 134-135 (1873); Warth v. Seldin, 422 U. S. 490, 498-500 (1975). We vacate the ruling on the two-year limitation, since none of the appellants has standing to challenge this provision.

2. If the trial court was correct in holding that the state could not require licensing, it was proper for the court to consider ancillary licensing provisions. Thus, the

court properly ruled on the third and fourth sentences of section 3, and the second sentence of section 2. However, our holding in this case, infra, that licensing is a valid requirement changes the situation.

Given this ruling, appellants cannot challenge the renewal provisions of the third sentence of section 3 until they have obtained licenses. The only challenge to the fourth sentence of this section, which requires posting of licenses, is that it is dependent on the allegedly invalid license requirement. In light of our ruling that a license may be required, no ruling on the validity of this sentence can be had. The second sentence of section 2 cannot be challenged by appellants, for there is no controversy as to whether appellants' games are "bingo," thus this section has no effect under its own terms. We vacate the rulings on these sentences.

3. Appellants have no standing to challenge any of the provisions of section 7. Appellants have not applied for licenses; therefore, they cannot challenge the authority of the commissioner to revoke licenses, or the procedure by which licenses are revoked.

The provisions for searches and seizures cannot be challenged absent a justiciable case or controversy, and there is absolutely no indication in the record of searches, seizures, or threats of them, with or without warrants. See *Scoville v. Calhoun,* 76 Ga. 263 (1886). Even assuming this section allows warrantless searches, and violates the Constitution, it is entirely possible that the state will obtain search warrants prior to every search, for the fruits of invalid warrantless searches are not admissible in court. Although the state has not questioned appellants' standing to raise these issues, we will not render an advisory opinion. *Hinson v. First Nat. Bank in Waycross,* 221 Ga. 408 (144 SE2d 765) (1965); *South Ga. Natural Gas Co. v. Ga. Pub. Serv. Comm.,* 214 Ga. 174, 175 (104 SE2d 97) (1958). The ruling on section 7 is vacated.

4. Section 8 (d) of the Act includes two provisions. The first sentence dealing with pyramiding of prizes applies only to licensed bingo operating organizations, therefore, appellants lack standing to challenge it. We vacate the ruling on this question.

5. Appellants have alleged no justiciable

controversy as to section 11. The ruling upholding this section is vacated.

6. Appellants' remaining challenges to the provisions of this Act must be considered in view of the intent of the legislature and the people in amending Art. I, Sec. II, Par. XI of the Constitution (the "bingo amendment"), set out at Ga. L. 1976, p. 1874 (Code Ann. § 2-211). The "bingo amendment" states that "the operation of a nonprofit bingo game . . . shall be legal." Appellants argue that this statement was intended to create a constitutional right of nonprofit organizations to operate bingo games, a right on a par with the guarantees of freedom of the press. No restrictions on this right other than those contained in the amendment are valid, in their opinion, unless particular operations are held inimical to the public welfare in judicial proceedings.

The elevation of the status of bingo from proscribed lotteries to a nearly absolute constitutional right would be an extraordinary event. Having examined the language of the constitutional amendment and the legislative history, we find that this was not the intended result of the constitutional amendment. The only fact which supports appellants' argument is the use of the phrase "shall be legal" instead of some other phrase which would more clearly delineate the power of the legislature to regulate legal bingo. We agree that the language chosen has the effect of preventing the legislature from outlawing bingo in general, or making it practically impossible to operate a bingo game, and to this extent the police power has been circumscribed. But this does not mean that the state's police power has been emasculated so that the legislature is without power to outlaw abuses of the right to operate bingo games.

The language of the amendment must be viewed in light of the preexisting provision of the Constitution, which provided: "All lotteries, and the sale of lottery tickets, are hereby prohibited; and this prohibition shall be enforced by penal laws." Art. I, Sec. II, Par. IV, 1945 Constitution. The bingo amendment did not change this language. Lotteries were in fact outlawed by a penal statute, Code § 26-2701. Unless the amendment made some provision which would repeal this statute by

implication (to the extent it prohibited bingo), there would be a question as to whether the legislature would have to amend § 26-2701 before the "bingo amendment" would become effective. We believe the use of the term "shall be legal" was only intended to make the amendment self-effectuating by eliminating the prohibition of bingo implicit in Code § 26-2701.

Our conclusion that the "bingo amendment" does not preclude regulation of bingo by the legislature is supported by the rest of the amendment. The amendment contains restrictions on the operation of nonprofit bingo games, and these restrictions indicate an intent to permit only small, nonprofessional bingo operations in which virtually all of the profits accrue to nonprofit groups. Moreover, the provision for public reports of the financial affairs of organizations running nonprofit bingo operations indicates that the legislature wanted to obtain information about these operations for the purpose of enacting legislation to prevent abuses.

If the legislature could not act for this purpose, the intent of the amendment could be circumvented by clever operators of what amount to commercial gambling operations. We hold that the legislature may reasonably regulate legal bingo to prevent the commercialization of operations, to prevent the unnecessary diversion of bingo profits from the coffers of nonprofit organizations, and to otherwise promote the public welfare consistent with the intent of the "bingo amendment."

7. The trial court held that the "bingo amendment" precludes the imposition of a requirement that all bingo operators obtain a license. Ga. L. 1977, p. 1164, at 1165, § 2. We disagree. A large number of lawful activities are licensed by the state, e.g., the operation of motor vehicles and the practice of various professions. In some instances these licensing requirements are imposed to assure a level of competency among those who engage in the activity, but licenses are also required as a matter of administrative convenience. If a license is required to do something, enforcement officials (and the public) can more easily determine if particular individuals may lawfully engage in that activity. Those who are forbidden

to do so because of lack of proven competency or the violation of some regulation can be identified (and avoided) by a simple determination of whether they have a license. Licensing serves valid administrative and law enforcement purposes.

Since this licensing requirement does not unreasonably burden the right to operate bingo games by placing unreasonable restrictions on the granting of licenses, we find no conflict with the "bingo amendment." Cf., *McCollum v. Bass,* 201 Ga. 537, 538-539 (40 SE2d 650)(1946). We reverse the holding of the trial court on the license requirement of section 2.

8. In addition to requiring a license, the 1977 Act also requires payment of a filing fee of $100. Ga. L. 1977, p. 1164, at 1165, § 3. This is a burden on organizations seeking to operate bingo games, and the question is whether it is unreasonable.

The operation of bingo games causes the expenditure of state funds, if only to process the reports required by the "bingo amendment." The state has a legitimate interest in imposing a filing fee to offset its expenses, and there is no explicit prohibition of this in the Constitution. We cannot agree that the state must bear bingo-related expenses out of tax revenues. Therefore, the fee is valid unless it so burdens the exercise of the right to operate bingo games as to make it unreasonably difficult to operate them. The record in this case does not show that the fee would have this effect on appellants, and thus the trial court erred in ruling this requirement invalid. We reverse the finding that the first sentence of section 3 is invalid.

9. The provisions of section 5, which forbid the use of minors in operating bingo games, and forbid minors to play bingo unless accompanied by an adult, are valid. The power of the state to regulate the activities of minors is broader than the police power to regulate the conduct of adults. Prince v. Massachusetts, 321 U. S. 158, 168 (1944); Ginsberg v. New York, 390 U. S. 629, 636-643 (1968). If there is some rational basis for treating juveniles differently with respect to economic matters, and the law serves a legitimate state purpose, the law does not deny equal protection or due process. Cf. *Cannon v. Ga. Farm*

*Bureau Mut. Ins. Co.,* 240 Ga. 479, 481 (3) (1978).

The legislature could rationally determine that the employment of children in bingo operations would place them in the position of advocating the playing of bi ᵢgo, which is a type of lottery, and that in the impressionable years of childhood this advocacy could lead to the belief that gambling in general is good. This would weaken the general prohibition on gambling.

The prohibition on minors playing bingo unless accompanied by an adult supports the parental right of supervision over their children. Parents may want to prevent their children from playing bingo, and this restriction makes it more difficult for children to play without parental consent. Moreover, the presence of an adult could have a healthy influence on the child. The trial court correctly upheld this provision.

10. Sections 4, 8 (a), (b), (c) and (e) of the Act place restrictions on the places in which bingo may be played, by whom they may be operated, and how the operations may be conducted. These sections have similar purposes and effects, therefore we consider them together.

The bingo amendment was not intended to authorize fulltime, professional bingo operations. Moreover, the amendment was intended to allow only nonprofit organizations to benefit from bingo, and to the extent bingo proceeds are diverted from nonprofit groups this intent has been frustrated.

The facts concerning the operations of appellants illustrate how various contracts serve to defeat the intent of the constitutional amendment. If professionals such as The Club Room, Inc. are hired to operate bingo games for nonprofit organizations, or if premises owned by profit-motivated persons are rented for use in bingo, funds are diverted from the coffers of nonprofit groups. Such contracts are essential to the existence of professional bingo operators, and naturally tend to encourage the development of full-time, professional bingo operations. Legislation designed to prevent such abuses is not in conflict with the "bingo amendment" unless it makes the operation of legitimate bingo operations unreasonably difficult.

Section 4 addresses the problem of renting facilities

from profit-motivated persons. Only if the nonprofit group regularly uses the premises for purposes other than bingo[2] can the group rent the premises from a profit-making corporation, or an individual. The classification of types of premises based on the type of owner is based on a rational distinction which serves to further the purposes of this Act. No denial of equal protection or due process is shown. *Cannon v. Ga. Farm Bureau Mut. Ins. Co.,* 240 Ga. 479, 481 (3) (1978). The purpose and effect of this section is consistent with the "bingo amendment."

The fact that the distinctions drawn in section 4 may be imperfectly related to the goals desired does not make the section invalid. If the classification is overinclusive or underinclusive, it is nevertheless a good enough fit. Cf., Hughes v. Alexandria Scrap Corp., 426 U. S. 794, 813 (1976). We cannot require the legislature to establish a perfect classification system. See *Cannon v. Ga. Farm Bureau Mut. Ins. Co.,* supra.

Nor is there any proof that any of appellants are unable to operate bingo games without renting facilities from individuals or a for-profit corporation. Another case would be presented if some nonprofit group could establish that they could not operate bingo consistently with this section.

Appellants assert that this section denies them their "right to contract." This argument is without merit. The right to contract (to the extent it exists) is limited to a right to enter into lawful contracts. The state has made the contracts covered by this section unlawful through a valid exercise of its police power.

Appellants also claim that a prohibition such as this would be valid only if the prohibited class of contracts were found inimical to the public welfare by a court. This argument is also without merit. The legislature has the power to act on its own determination of facts, and there is

---

[2] This exception is reasonable, and consistent with the purpose of the Act. If the group regularly uses the premises for its nonbingo operations it is less likely that an unreasonable rent will be charged, and less likely that the premises are used for bingo on a full-time basis.

no requirement that that determination be stated in the Act.

11. Section 8 (a) prevents nonprofit organizations from entering into contracts for the operation of bingo games on their behalf. Such contracts were shown in this case to result in a substantial loss of bingo profits. Moreover, such contracts support and encourage full-time, professional bingo operations, e.g., The Club Room, Inc. This prohibition is entirely consistent with the language and intent of the "bingo amendment," which specifically requires that the bingo game be operated by the nonprofit group.

Appellants argue that this prohibition violates each of the other constitutional rights discussed with regard to section 4. It does not. We affirm the holding that this section is valid.

12. Section 8 (b) prohibits a nonprofit organization from lending its name or identity for use in operating or advertising bingo games, except those which it directly and solely operates. This section must be considered in light of section 8 (c), which prohibits bingo games which are operated by two or more organizations, and section 8 (a), which prohibits contracts for operating bingo games.

The lending of the name of an organization contrary to section 8 (b) may lead to false and deceptive advertising if section 8 (c) is complied with. By advertising what appear to be jointly sponsored games the operator could increase his patronage by drawing individuals interested in different groups. Some individuals will play only if they believe their losses will accrue to a worthy cause, and joint advertising may give this impression even where the profits do not accrue to all of the advertised sponsors.

If section 8 (c) is being violated, joint advertising would not have this tendency towards deception. However, such ads would be furthering unlawful activities, and thus can be proscribed. The same is true if section 8 (a) is being violated.

We interpret this section to prohibit the lending of an organization's name in a situation which will result in false or misleading promotions or advertisements, or promotions or advertisements of unlawful bingo games.

So construed this section does not deny appellants any right to legitimate uses of their names or identities. We affirm the holding that section 8 (b) is valid.

13. Section 8 (c) makes it unlawful for licensed bingo operators "to operate bingo games jointly or to operate bingo games upon the same premises during any 18-hour period." The eighteen-hour restriction serves to prevent the establishment of full-time bingo parlors by limiting the amount of use any premises receive. This is consistent with the "bingo amendment."

This does not deny equal protection, since it treats all organizations equally. The fact that a game played by another organization prevents the second group from playing for eighteen hours does not treat the second group differently, for the earlier group had to comply with the same restriction.

The state has the power to regulate the use of private property in furtherance of a legitimate public interest. Full-time bingo parlors could rationally be found to be inimical to the public welfare. Cf., *City of Smyrna v. Parks,* 240 Ga. 699 (1978).

This section also prohibits jointly operated bingo games. Appellants have not argued the validity of this provision. We affirm the holding that section 8 (c) is valid.

14. Section 8 (e) limits the compensation of individuals assisting with bingo operations to $15 per day, and prohibits other payments for operating bingo. This section serves to discourage professional bingo operators, and to limit the amount of money diverted from nonprofit organizations, without entirely denying them the opportunity to secure paid help. As with most of the other sections, appellants have found a variety of constitutional infirmities in this section, but we cannot agree with any of them. We affirm the upholding of section 8 (e).

15. The second sentence of 8 (d) merely sets forth an accurate statement of the meaning of "equivalent value" as used in the 1977 Act, and the "bingo amendment." We see no conflict with the amendment, and affirm the upholding of the provision.

16. The penalty provisions of section 10 are attacked only because they relate to the other provisions in issue.

The ruling that this section is unconstitutional as applied to sections 2, 3 and 7 was error. We reverse.

*Judgment vacated in part, affirmed in part, and reversed in part. All the Justices concur.*

Argued January 10, 1978 — Decided January 31, 1978 — Rehearing denied February 21, 1978.

*Thompson, Stovall, Stokes & Thompson, Fletcher Thompson,* for appellants.

*Arthur K. Bolton, Attorney General, R. Douglas Lackey, Assistant Attorney General,* for appellee.