32717. BROWN et al. v. HOUSING AUTHORITY OF THE CITY OF ATLANTA.

HILL, Justice.

The Housing Authority of the City of Atlanta (AHA) filed a petition for writ of mandamus, naming the Planning Director and Commissioners of Fulton County in their official capacities as defendants, seeking to compel the issuance of a building permit to renovate an apartment complex as a housing project outside of, but within ten miles of, the City of Atlanta and within unincorporated north Fulton County. The Housing Authority of Fulton County (FHA) intervened as an additional defendant. The defendants answered and filed counterclaims for declaratory judgment and injunctive relief, seeking to establish that FHA has the exclusive right to operate housing projects in unincorporated Fulton County.

The superior court held that AHA has exclusive jurisdiction to operate housing projects in unincorporated Fulton County within ten miles of the City of Atlanta and

that FHA may not operate within that ten mile zone without the consent by resolution of AHA. The court denied injunctive relief against AHA, and FHA appeals.

For reasons which will become clear later, the threshold inquiry in this case is which housing authority began to operate in unincorporated Fulton County first, AHA or FHA. FHA argues that even though it has never constructed, acquired or operated a housing project as defined in the Housing Authorities Law (Code Ann. § 99-1101 et seq., as amended), it began operation as a housing authority within the meaning of that law in late 1972 or early 1973 after its operation was authorized by resolution of the Fulton County Commissioners in January, 1972.[1] FHA argues that AHA on the other hand did not operate in any area in unincorporated Fulton County within ten miles of the City of Atlanta until after FHA began to operate in late 1972 or early 1973. We disagree. As FHA urges, a housing authority may begin to operate as a housing authority without the necessity of operating a housing project. Contracting for the construction and acquisition of a housing project constitutes operation by a housing authority. See the last sentence in Code Ann. § 99-1103 (i). AHA contracted for the construction and purchase of the Boat Rock project, 268 units at a cost of over five million dollars, in unincorporated south Fulton County in 1971. A preliminary contract for the Red Oak project, also in unincorporated south Fulton County, was entered into by AHA in 1970.[2] FHA urges that these two projects were not occupied by tenants until 1974. If tenant occupancy were the criteria for determining when a housing authority begins operation then FHA's first tenant occupancy (rent subsidy payments under Sec. 8 of the Housing Assistance Payment Program, 42 USCA § 1437 (f)) did not occur until 1976. Just as actual operation of a housing project is not the test to be applied to FHA, neither is it the test to be

---

[1] The organizational meeting of FHA was held in August, 1972. Its first HUD application was submitted in January, 1973.

[2] See Crow v. Brown, 332 FSupp. 382 (N.D. Ga. 1971); affd. 457 F2d 788 (5th Cir. 1972).

applied to AHA. We find no error in the trial court's finding that AHA was operating in unincorporated Fulton County within ten miles of the City of Atlanta before FHA was in operation.[3]

Having determined that AHA was the first housing authority (as between AHA and FHA) to operate in unincorporated Fulton County within ten miles of the City of Atlanta, and that such operation began in 1971 or earlier, a review of the history of the Housing Authorities Law becomes appropriate.

The Housing Authorities Law was enacted in the later years of the depression, in 1937 (Ga. L. 1937, p. 210; Code Ann. § 99-1101), and AHA was authorized and began operating inside the City of Atlanta shortly thereafter. The 1937 law defined "area of operation" as follows (Ga. L. 1937, pp. 210, 212): "(f) 'Area of Operation' in the case of a housing authority of a city, shall include such city and the area within 10 miles of the territorial boundaries thereof, but shall not include any area which lies within the territorial boundaries of any other city; *and* in the case of a housing authority of a county, shall include all of the county except that portion which lies within the territorial boundaries of any city." (Emphasis supplied.) It should be noted that the jurisdictions of city and county housing authorities overlapped at the outset.

In 1943 the definition of "area of operation" was amended by striking from the above definition the word "and" as well as the words which follow it (thereby deleting the definition of county area of operation) leaving the definition of city area of operation intact. Ga. L. 1943, pp. 146, 148. However, by that same enactment, regional housing authorities were created and a definition of area of operation for county and regional housing authorities was provided. Insofar as applicable to county authorities, it read as follows (Ga. L. 1943, pp. 146, 152): "The area of operation of a housing authority

---

[3] This finding is confirmed by the March 21, 1973, resolution of the Fulton County Commission which acknowledged the existence and agreed to the continuance in unincorporated Fulton County of city housing projects "existing or under construction."

created for a county shall include all of the county for which it is created . . .; provided that a county . . . housing authority shall not undertake any housing project or projects within the boundaries of any city unless a resolution shall have been adopted by the governing body of such city (and also by any housing authority which shall have been theretofore established and authorized to exercise its powers in such city) declaring that there is a need for the county. . . housing authority to exercise its powers within such city." Thus, the 1943 Act again contained those ten mile overlapping areas of operation which FHA now contends are in irreconcilable conflict.

After World War II there was a restatement of city area. Ga. L. 1951, pp. 219, 220, provided: "(f) 'Area of operation' in the case of a housing authority of a city, shall include such city and the area within 10 miles of the territorial boundaries thereof . . . *No* city, county, regional or consolidated *authority shall operate in any area in which an authority already established is operating without the consent by resolution of the authority already operating therein."* Code Ann. § 99-1103 (f). (Emphasis supplied.) (Provisions designed to avoid inter-city duplication have been omitted from the foregoing quotation.) It should be noted that the last sentence quoted above was added by the 1951 amendment and it should be recalled that AHA began operating within the ten mile zone in unincorporated Fulton County before FHA did.

This was followed the next year by a reenactment of the definition of county area of operation (Ga. L. 1952, pp. 365, 366): "The area of operation of a housing authority created for a county shall include all of the county for which it is created . . .: Provided that a county. . . housing authority shall not undertake any housing project or projects within the boundaries of any city unless a resolution shall have been adopted by the governing body of such city (and also by any housing authority which shall have been theretofore established and authorized to exercise its powers in such city) declaring that there is a need for the county . . . housing authority to exercise its powers within such city." Code Ann. § 99-1146.

In 1972, after the trial court's decision in Crow v.

Brown, supra, and about the time FHA began operating, a constitutional amendment (Ga. L. 1972, p. 1552) was adopted which supplemented the power of counties, municipalities and combinations thereof to exercise and provide certain enumerated powers and services, such as police and fire protection, including public housing: "Provided, however, that no City or County may exercise any such powers or provide any such service herein listed inside the boundaries of any other local governments except by contract with the City or County affected unless otherwise provided by any local or special law and no existing local or special laws or provision of this Constitution is intended to be hereby repealed." The Housing Authorities Law is a general law and was not preserved by the local/special law exception. See *Thompson v. Hornsby,* 235 Ga. 561, 563 (221 SE2d 192) (1975). The 1972 amendment, with certain possibly paradoxical additions not timely or material here, was readopted in the Constitution of 1976, Art. IX, Sec. IV, Par. II (Code Ann. § 2-6102).

Where a city organizes a housing authority, that housing authority is vested with the city's public housing power (Code Ann. §§ 99-1104, 99-1115; see also 22 Encyc. Ga. L., Municipal Corporations, § 191), and the same would be so of a county. Thus, according to the 1972 amendment, no city or county housing authority may exercise public housing powers or provide such services inside the boundaries of any other local governments except by contract, etc. See *Thompson v. Hornsby,* supra. Any argument that this effectively abolishes city housing authorities (as well as city police and fire departments, etc.) will not be entertained.

AHA argues that the 1972 amendment (Ga. L. 1972, p. 1552) cannot be considered on this appeal for the reason that appellants seek by that amendment to have the ten-mile donut provision in Code Ann. § 99-1103 (f) (Ga. L. 1951, pp. 219, 220) in favor of city housing authorities declared unconstitutional, but that appellants did not challenge the constitutionality of this provision in the trial court.[4] FHA counters that it does not seek to have the

---

[4] AHA would have the case decided, without

ten-mile donut provision declared unconstitutional but seeks to have the more recent reenactment of county area of operation, Ga. L. 1952, pp. 365, 366, construed as irreconcilably conflicting with and thereby superseding and repealing the city donut provision in Ga. L. 1951, pp. 219, 220. FHA urges further that such construction would conform to the 1972 constitutional amendment, and statutes should be construed to conform to, rather than conflict with, the Constitution.[5] In this connection, FHA urges that it cited the 1972 amendment in a brief filed in the trial court and argued that the amendment "repealed" the ten-mile provision in Code Ann. § 99-1103 (f). It is difficult to understand why the 1972 amendment and its 1976 counterpart (Code Ann. § 2-6102, supra) were not given more emphasis by the trial attorneys. AHA could have relied upon them in defending against the counterclaims, to protect its Red Oak and Boat Rock projects as well as its authority to operate throughout Fulton County. (AHA urges on appeal that it has the right to operate housing projects in unincorporated Fulton County even under the 1972 amendment by virtue of a 1964 contract with Fulton County; see, among others, pars. 5 and 6 of the 1964 cooperation agreement.)

If we were to affirm the trial court's decision based

---

reference to the 1972 constitutional amendment, on the basis that the areas of operation of city and county housing authorities are not in conflict and can be reconciled as was done by the trial court so that AHA's area of operation includes the ten-mile donut around Atlanta from which area FHA is excluded by virtue of AHA's priority of operation in that area. Ga. L. 1951, pp. 219, 220 (Code Ann. § 99-1103 (f)), and Ga. L. 1952, pp. 365, 366 (Code Ann. § 99-1146).

[5] Occasionally a case will arise where a party urges that a statute or statutes should be construed in harmony with a provision of the Constitution. When such an argument is made, its converse should be considered and perhaps be appropriately raised; to wit: if the statute or statutes were to be construed so as not to harmonize with the Constitution then it or they would be in conflict with the Constitution and therefore void.

upon the nonraising of the constitutional prohibition on cities operating housing projects in the unincorporated area inside the boundaries of a county, any citizen of unincorporated Fulton County could immediately sue AHA to enjoin its extraterritorial operations as being in violation of the 1972 constitutional limitation. But see Crow v. Brown, supra. We do not find that the requirements as to constitutional challenges should be invoked in suits involving public bodies to defeat such constitutional rights as the public may have in the premises. What was said in another connection in *Pope v. City of Atlanta,* 240 Ga. 177 (1) (1977), with slight modification, becomes apropos: Here the suit attempts to enjoin a public body from acting under a statute alleged to be unconstitutional under the State Constitution. The matter is one of great public importance and has not been decided. If the constitutional challenge requirements are invoked on this appeal, the same issue will likely be raised in later litigation. In that event both the courts and parties must repeat the process, with its attendant delay, until the issue is again presented to this court. A decision now may preclude additional yet unavoidable litigation. Judicial economy will result and the public interest will be served. *Pope v. City of Atlanta,* supra, 240 Ga. at 180. Because the rights of the public are involved, we will proceed to the merits, including consideration of the Constitution, to the extent possible.

Under the 1972 constitutional amendment, Ga. L. 1972, p. 1552, no city housing authority may exercise public housing powers or provide public housing services outside its boundaries except by contract with the city or county affected unless otherwise provided by any local or special law.[6] In view of the constitutional amendment the

---

[6] No applicable local or special law has been cited or found. AHA urges that it has a 1964 contract within the meaning of the 1972 amendment. Because no facts have been developed as to whether the county has received payments in lieu of taxes, streets, sidewalks, etc., as to the Red Oak or Boat Rock projects pursuant to the 1964 cooperation agreement, as amended; i.e., whether the 1964 cooperation agreement was interpreted by the

judgment of the superior court must be vacated and this case remanded for such further proceedings not inconsistent with this decision as may be necessary or appropriate.

*Judgment vacated. All the Justices concur.*

ARGUED SEPTEMBER 12, 1977 — DECIDED FEBRUARY 7, 1978.

*Strother, Weiner & Dwyer, John R. Strother, Jr., Webb, Young, Daniel & Murphy, Harold T. Daniel, Jr.,* for appellants.

*Patterson, Parks, Jackson & Howell, Lynwood A. Jackson,* for appellee.

---

parties as a contract with the county applicable to AHA projects outside the city, we are unable to make a final disposition of this case on appeal.