## 41296. MONTE CARLO PARTIES, LTD. v. WEBB et al.

(322 SE2d 246)

SMITH, Justice.

Appellant, Monte Carlo, brought this action in Fulton County Superior Court for a declaratory judgment and for an injunction against the Solicitor General of the State Court of Fulton County and the District Attorney of Fulton County. Appellees counterclaimed for the confiscation of appellant's party props. The trial judge, hearing the case without a jury, found for Solicitor Webb and District Attorney Slaton on all counts. Appellant raises four enumerations of error. We affirm in part and reverse in part.

Appellant conducts parties as a business. Most of its income is derived from its Casino Night parties. In July 1983, appellee Webb informed appellant and its client, the High Museum of Art, that he considered the museum's annual Casino Night Party to be in violation of the state gambling laws, and that he would be forced to prosecute upon any violation of the law. The High Museum promptly changed the format of its party.

Monte Carlo, shortly thereafter, sought a declaration in the trial court that its business activity was not illegal and requested the court to enjoin Solicitor Webb from fulfilling his threat to prosecute, at least until the declaratory action was settled. Monte Carlo also requested that the court find Georgia's gambling laws, OCGA §§ 16-12-20 (2), 16-12-24, 16-12-30 and 16-12-32, unconstitutional. Appellees moved to dismiss the complaint and filed a counterclaim requesting the discontinuance of Monte Carlo's casino night business, and seeking the condemnation of Monte Carlo's party props. They contended that the props were gambling devices and thus were subject to confiscation.

The court found that appellant conducted casino night parties in three formats. In all formats, the host would pay Monte Carlo a flat fee for its services. Guests were always given play money which they could use in the games provided by Monte Carlo, if they wished. Guests could purchase prizes provided by the host with the play money at the end of the night. Invitations were required for admission to the parties.

In the first format, the court found that the host did not require guests to reimburse him in any way or pay any portion of the fee paid to Monte Carlo. Guests were freely given play money to use at the various games. No money passed from the guests to the host or Monte Carlo.

In the second format, guests paid the host a fixed amount for food, drinks, and entertainment, which included the Casino Night party. Guests were given equal amounts of play money at the beginning of the night. The court did not include details of the financial

transactions involved in this format in its findings.

In the third format, which was used at events such as the High Museum fund raising party, guests paid a flat fee for food, beverage, and entertainment. Payment entitled a guest to a specific amount of play money. Payment of an additional amount of money would entitle a guest to a larger sum of play money, not otherwise available. The host kept the money donated by guests that exceeded the amount of the fee charged by Monte Carlo.

The court found that appellant owned roulette wheels, blackjack tables, baccarat tables and shoes, craps tables, a wheel of fortune, over-and-under tables, chuck-a-luck tables, bang tables, poker tables, and various other gambling props, such as chips and cards. Appellant furnished employees to operate the games and equipment upon request.

1. Appellant asserts that the trial court erred in ruling that the Casino Night parties, in all formats, violate the gambling laws.

The crime of gambling, in Georgia, consists of three elements: consideration, chance, and prize. *Grant v. State,* 75 Ga. App. 784, 787 (44 SE2d 513) (1947). Of the three elements, chance and prize provide the lure for the public to participate in a gambling scheme. The expenditure, or "hazarding" of consideration in pursuit of a chance to win a prize produces the "baneful effect" that the law is designed to prevent. *Boyd v. Piggly-Wiggly Southern, Inc.*, 115 Ga. App. 628, 641 (155 SE2d 630) (1967). We agree with appellant that the element of consideration is totally lacking in the first format.

a) As to the first format, in context of the evening as a whole, no guest is required to part with anything of value to participate in the games and no one risks losing anything of value by participating. Compare *Barker v. State,* 56 Ga. App. 705 (193 SE 605) (1937). Accordingly, we hold that Casino Night parties falling under the first format do not violate the law. *Grant,* supra.

b) Under the second format, guests pay a convention committee or an organization a fee to cover entertainment, food, beverages and expenses of the Casino Night party. The organization then arranges for Monte Carlo to throw a party for the group. The organization pays Monte Carlo from the money paid to it by the guests. Chips or play money are given to all participants equally. At the end of the night, chips or play money may be used to purchase prizes. The better prizes cost more in chips or play money. Prizes are purchased, not donated, for use under this format.

The guests ultimately pay for the chips and play money. This is consideration under our gambling laws. The chance is taken in risking chips and play money at the various games, and the prize is the right to exchange the chips and play money for objects valued according to the amount of chips and play money exchanged. The second format

used by Monte Carlo would violate the law. *Grant,* supra.

2. Appellant does not contest the existence of the elements of prize and chance in the third format. Appellant charges that there is no consideration involved, since the fees charged do not form the purse. We disagree.

Guests at the High Museum party, which was to operate under the third format, were required to make a donation in order to receive any play money. The donations, according to appellant, were intended to exceed the amount spent on the party. The excess was to be kept by the museum.

Here, clearly, the chances were "paid for in bulk by the general body of [contributors]." *Barker,* supra at 712. The fact that the prizes involved were donated to the museum is irrelevant to the element of consideration in this case. The fact that the museum required a donation in exchange for each chance, or each allotment of play money, establishes the element of consideration. Though support of the arts is certainly a worthy end, charities are not exempt from the law, and the trial court did not err in holding these means to that end illegal. The third format used by Monte Carlo would violate the law.

3. OCGA §§ 16-12-20 (2) and 16-12-24 punish a person for knowingly possessing goods designed for gambling, or gambling devices. In the past, these statutes have been applied to people in the possession of a gambling device per se (a slot machine) or to people involved in actual gambling. *Elder v. Camp,* 193 Ga. 320 (18 SE2d 622) (1942). While it is not necessary for the state to catch the person charged with this crime in the act of using the equipment to gamble, the authorities must, for the purpose of these statutes, show that the equipment has actually been used for gambling purposes.

The functional use test adopted by the trial court would only require a showing that the equipment could be used for gambling purposes to establish that the props are subject to confiscation. This test would subject such objects as coins, dogs, and backgammon boards to confiscation based on the possibility that they might be used to gamble. Such a rule would grant law enforcement authorities almost unfettered discretion in enforcing the statutes, and thus the statutes could well be unconstitutional.

Applying the actual use test to this case, we do not find sufficient evidence that any of appellant's equipment has been used in actual gambling to subject the equipment to confiscation. There is no evidence that the equipment involved in this case was used in any of the earlier High Museum parties. Accordingly, the trial court erred in ordering the confiscation of appellant's props.

4. Appellant claims that the state denies it equal protection by denying it the right to raise funds for the museum with a casino party while allowing other nonprofit organizations to raise money playing

bingo. It does not claim that it is prevented from running a bingo game. It claims that there is no rational basis to distinguish bingo from a casino party.

We have noted that the bingo amendment contains regulations controlling the operation of bingo games, geared towards "only small, nonprofessional bingo operations in which virtually all of the profits accrue to nonprofit groups." *St. John's Melkite Catholic Church v. Commr. of Revenue*, 240 Ga. 733, 737 (242 SE2d 108) (1978). Whether the amendment represents a small step toward broader legalization of lotteries and gambling for the benefit of charity, or a one-time exception to the gambling laws for the benefit of nonprofit organizations, it is clear that the state crafted the amendment so that it might retain control over the experiment and learn of its effects. The distinction between bingo and other forms of gambling is clearly related to the state's interest in monitoring and controlling the activity created by the new law. We find no denial of equal protection.[1]

As to appellant's vagueness argument, we feel that the standards set out in this opinion adequately specify the conduct that the public must avoid, and restrict any excessive discretion that the authorities might have possessed. We thus find that the laws dealing with gambling are not fatally vague. See *Lester v. State*, 253 Ga. 235 (320 SE2d 142) (1984).

Appellant's overbreadth argument related to the trial court's treatment of the confiscation issue, and thus is no longer relevant in light of our opinion today.

*Judgment affirmed in part; reversed in part. All the Justices concur.*

DECIDED NOVEMBER 6, 1984.

*Swift, Currie, McGhee & Hiers, John P. MacNaughton, Jane C. Barwick, William Mayton,* for appellant.
*Lewis R. Slaton, District Attorney, H. Allen Moye, Assistant District Attorney, James L. Webb, Solicitor, Robert Lee O'Brien, Jr., Assistant Solicitor,* for appellees.

---

[1] We note that the amendment was designed to keep professionals from running the bingo games for their own benefit, and to the detriment of the nonprofit organizations.