41230. BOARD OF TRUSTEES OF THE EMPLOYEES' RETIREMENT SYSTEM OF GEORGIA et al. v. KENWORTHY. 41232. EMPLOYEES' RETIREMENT SYSTEM OF GEORGIA et al. v. GEORGIA STATE EMPLOYEES ASSOCIATION, INC. et al.
(322 SE2d 720)

BELL, Justice.

These cases, consolidated for appeal, arise out of the payment by appellant Employees' Retirement System of Georgia (ERS) to former Governor George D. Busbee of certain retirement benefits allegedly due him by virtue of Busbee's "involuntary separation" from state service following the expiration of his second term as Governor in 1983. See OCGA §§ 47-2-123, 47-2-1 (20) & (21). The trial court held in each case that Busbee was not entitled to the involuntary separation benefits claimed by him. For reasons which follow, we dismiss the appeal.

The procedural history of this case is rather complex. On February 7, 1983, former Governor Busbee applied to the ERS for involun-

tary separation retirement benefits in the amount of $57,673.80 annually, based on some 27 years of state employment, principally as a member of the Georgia House of Representatives and as Governor. The ERS Board granted Busbee's application, and he received his first monthly retirement check in the amount of $4,749.01. In calculating the benefits due Busbee, the ERS credited him with additional service to the state based on the statutory requirement that persons involuntarily separated without prejudice from state service be treated as though they had remained in service until, and received a service retirement at, age 65. See OCGA § 47-2-123 (c) (3).[1]

On March 16, 1983, Henry E. Kenworthy, appellee in case no. 41230, filed an action in Fulton Superior Court, naming as defendants the Board of Trustees of ERS, both individually and in their official capacity, and Abe Domain, director of ERS. Former Governor Busbee, although not named originally as a defendant, was later added as a party. In his complaint Kenworthy, as a taxpayer and citizen of Georgia, sought to have the payment of involuntary separation benefits to Busbee declared illegal and enjoined. Similarly, on April 18, 1983, Georgia State Employees Association, Inc., (GSEA) and four of GSEA's individual members, appellees in case no. 41232, filed suit in Fulton Superior Court seeking substantially the same relief, and naming as defendants Busbee, ERS, the Board of Trustees of ERS, the Georgia Legislative Retirement System (LRS), its Board of Trustees, and each member of ERS, LRS, and their respective Boards, both individually and officially. In its complaint GSEA prayed that ERS be restrained from paying involuntary separation retirement benefits to former Governor Busbee, to four members of Busbee's staff named in the complaint, to past or present members of the General Assembly, to individuals who had transferred into ERS from other retirement systems, and to others. Later GSEA amended its complaint to name some 50 additional pensions it considered improper and asked the court to enjoin their payment. On January 9, 1984, the trial judge issued an order requiring GSEA to join as defendants all individuals whose involuntary separation benefits were being challenged. In response to this order, the plaintiffs amended their complaint on February 3, 1984, to delete their challenge to the receipt of involuntary separation benefits by anyone other than Busbee. Thus it can be seen that, in each of these cases, former Governor Busbee was the only party to the lawsuit who had received or was potentially entitled to receive involuntary separation retirement benefits.

---

[1] Appellees do not question, and we do not address, former Governor Busbee's entitlement to normal service retirement benefits. The sole question raised in this appeal is the legality of Busbee's claim to involuntary separation benefits, OCGA § 47-2-123, and the trial court's disposition of that claim.

Following extensive discovery, all parties to case no. 41230 filed motions for summary judgment, while in case no. 41232 only Busbee and ERS moved for summary judgment. On March 26, 1984, trial judge Luther Alverson entered the orders which form the basis of this appeal. In case no. 41230 the court granted summary judgment for appellee Kenworthy and against defendants Busbee and the Board of Trustees of ERS. Judge Alverson enjoined the disbursement of involuntary separation retirement benefits to Busbee, and referred to his order in case no. 41232, entered the same day, for his rationale.

In case no. 41232, Judge Alverson entered a lengthy order detailing the reasons for deciding that former Governor Busbee was not entitled to involuntary separation benefits from the ERS. As a preliminary matter, he dismissed the LRS and its Board of Trustees as unnecessary parties to the suit, and further held that there was no controversy presented by the suit with respect to any retirees except former Governor Busbee. The order proceeded to deny summary judgment to defendants Busbee and ERS, holding that for essentially three reasons Busbee was not entitled to receive involuntary separation retirement benefits. First, the court held that the definition of "involuntary separation" found in the ERS Act, OCGA § 47-2-1 (20), does not apply to a governor who is constitutionally prohibited from serving beyond a second consecutive term. Second, the court stated that OCGA § 47-2-294 prohibits any person who transfers into ERS from LRS from applying transferred creditable service toward involuntary separation retirement benefits. Since former Governor Busbee had included such transferred creditable service from the LRS, he did not have the required minimum years of service to qualify for the grant of involuntary separation benefits, the court held. Third, the court held that these issues notwithstanding, former Governor Busbee had not accrued sufficient creditable service to the state to qualify for involuntary separation retirement benefits.

The Board of Trustees of ERS filed a direct appeal from the grant of summary judgment to Kenworthy in case no. 41230. Busbee also filed a notice of appeal from that judgment, but subsequently withdrew his appeal prior to the transmittal of the case to this court. In case no. 41232, Busbee and ERS each applied to this court for permission to pursue an interlocutory appeal from the denial of their motions for summary judgment, which we granted. See OCGA § 5-6-34 (b). Busbee, however, did not file a notice of appeal following the grant of his application. See OCGA § 5-6-34 (b). In addition to abandoning his appeals, former Governor Busbee withdrew his application to ERS for involuntary separation retirement benefits, and returned all involuntary separation retirement benefits previously paid to him. On May 17, 1984 the Board of Trustees of ERS authorized the withdrawal of Busbee's application for involuntary separation retirement

benefits. The remaining parties then filed briefs and orally argued the case before this court, concentrating their efforts on the trial court's construction of OCGA § 47-2-294 as prohibiting the transfers of involuntary separation credits from LRS into ERS. After considering the appeals, we have concluded that they should be dismissed.

When former Governor Busbee abandoned his appeals, the first and third reasons given by Judge Alverson in his order for denying involuntary separation retirement benefits — that the definition of "involuntary separation" found at OCGA § 47-2-1 (20) did not apply to a governor who is constitutionally prohibited from serving beyond a second consecutive term, and that Busbee had not accrued sufficient creditable service to the state to qualify for involuntary separation retirement benefits — immediately became moot. The only remaining issue, all parties agree, is whether the trial judge correctly construed OCGA § 47-2-294 as prohibiting any legislator who transferred into ERS from LRS from claiming involuntary separation retirement benefits.

Appellee Kenworthy asserts that the appeals should be dismissed for lack of a justiciable controversy. We agree. "A controversy is justiciable when it is appropriate for judicial determination. It must be definite and concrete, touching the legal relations of parties having adverse legal interests, rather than being hypothetical, abstract, academic or moot. The controversy must be such that it will be resolved immediately and definitely by the judicial declaration." *Allstate Ins. Co. v. Shuman*, 163 Ga. App., 313, 315 (3) (293 SE2d 868) (1982) (citing Aetna Life Ins. Co. v. Haworth, 300 U. S. 227 (57 SC 461, 81 LE 617) (1937). This court has in the past generally refused to issue advisory opinions. See *DeKalb County v. Ga. Power Co.*, 249 Ga. 704, 707 (4) (292 SE2d 709) (1982); *St. John's Melkite Catholic Church v. Commr.*, 240 Ga. 733, 735 (3) (242 SE2d 108) (1978); *McDowell v. Judges ex Officio*, 235 Ga. 364 (219 SE2d 713) (1975). We normally limit our rulings to the specific case or controversy decided by the trial court, *DeKalb County v. Ga. Power Co.*, supra, and do not venture an opinion as to the legality of future actions which may or may not occur. *McDowell v. Judges ex Officio*, supra.

Here, former Governor Busbee, the only named party to this litigation eligible to receive an involuntary separation retirement pension from ERS, has abandoned his appeals, and his withdrawal of his application for involuntary separation retirement benefits has been authorized by the Board of Trustees of ERS. It is therefore clear that as to this litigation neither Busbee nor the ERS has pending claims adverse to the plaintiffs. To decide these appeals in their present posture would be to resolve a question as to the abstract meaning of OCGA § 47-2-294, and to hazard an opinion as to the legality of ERS' payment of involuntary separation benefits to unknown, unnamed

legislators who retired under entirely different circumstances, or who may not yet have retired at all. This we decline to do.

*Appeals dismissed. Judges Jack N. Gunter, George E. Oliver, and Thomas W. Ridgway concur. Judges James L. Bullard and George A. Horkan, Jr., concur specially. Smith, J., dissents. Hill, C. J., Marshall, P. J., Clarke, Gregory and Weltner, JJ., disqualified.*

DECIDED NOVEMBER 26, 1984.

*Michael J. Bowers, Attorney General, Carl C. Jones, Senior Assistant Attorney General,* for appellants.

*Southeastern Legal Foundation, G. Stephen Parker, Robert B. Baker, Allen R. Hirons,* for appellee (case no. 41230).

*Powell, Goldstein, Frazer & Murphy, Nickolas P. Chilivis, Kenneth G. Menendez, King & Spalding, Joseph B. Haynes, Ralph A. Pitts, W. Fred Orr II,* for appellees (case no. 41232).

BULLARD, Judge, concurring specially.

I join in the opinion of the majority that the consolidated appeal of these cases must be dismissed for lack of a justiciable controversy. I do so in the face of great temptation to reach the substantive question raised in this appeal by crossing the threshold requirement of justiciability upon arguments of judicial economy and public necessity. While such arguments are meritorious in many instances, and at first glance, are most assuredly alluring in the present appeal, to succumb to them under the facts of these actions would be to set this court upon an irresponsible and potentially perilous path. It is true that other jurisdictions have recognized a "public interest" exception to a firm standard of justiciability. See Arrington v. State, ex rel. Parsons, 422 S2d 759 (Ala. 1982); State ex rel. McLeod v. McInnis, 295 SE2d 633 (S.C. 1982); Seattle School Dist. No. 1 v. State, 585 P2d 71 (Wash. 1978); yet, a careful reading of these decisions reveals the uniform reluctance to relax the requirement of real and immediate controversy and the courts resort to any slackening of the requirement only in instances in which issues raised are unquestionably of constitutional magnitude and are involving matters that are strictly "publici juris," that is, matters in which no one citizen has any special interest other than that which is common to citizens in general. Neither of these circumstances can be credibly argued to exist in the present actions. Nor under the facts in these cases, do I find compelling or justified as a basis for substantive determination, the often laudatory rationale of judicial efficiency or economy if such saving is to be achieved at the expense of due process. By its opinion today, the majority refuses to so readily erode the mandate of justiciable controversy and to so transform itself into an advisory body, and in

this opinion, I do not hesitate to concur.

HORKAN, Judge, concurring specially.

I concur with the holding of the majority in these cases. However, I would also add that because former Governor Busbee withdrew his appeals, the judgments of the trial court holding that he is not entitled to receive involuntary separation retirement benefits have become final, binding, and conclusive as to his rights thereto, but that such judgments adjudicate only the rights of former Governor Busbee. "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." OCGA § 9-12-40. These actions were not filed or certified as class actions, OCGA § 9-11-23, and for this court to adjudicate the rights of other unknown and unnamed persons who were not made parties in these cases would violate the fundamental fairness of providing them with their day in court after proper notice and an opportunity to be heard.

SMITH, Justice, dissenting.

I respectfully dissent from the majority opinion. The issue in this case cries out for an answer. There are a number of ways for this court to provide one.

The majority states that the parties here have no adverse legal interests. ERS asserts that it must continue to pay benefits as it has in the past based on its interpretation of the 1961 amendment and the opinions of the Attorney General mentioned in the trial court's order. Plaintiffs contend that their interests are harmed by unjustified payments from retirement funds. I find adverse legal interests.

Since the majority is closing its eyes to the problem in this case, one of two things will happen. ERS could continue to pay involuntary separation benefits to the people who gained those benefits by virtue of the transfer from LRS to ERS in 1971. ERS could, on the other hand, halt all payments of involuntary separation benefits to anyone who gained those benefits by virtue of the transfer.

In the first situation, someone will refile this lawsuit and the issue will find its way to this court again. We will then make a decision on this issue. ERS and those receiving benefits will be placed in an ambiguous position in the interim. Everyone will face greater legal costs, and the courts will be unnecessarily burdened due to the additional lawsuit.

In the second scenario, retirees will sue ERS for the reinstatement of their pensions. In the meantime, they will lose a source of income, that they may have heavily relied upon, on the basis of a

superior court decision that did not necessarily rely upon the holding that caused the cut-off of payments. Once again, there will be two trials and two appeals. There will be great uncertainty for all, and someone will lose far more than they would have if this court had faced the issue today.

This controversy is quite "definite and concrete." The day after this opinion is released, the issue will prove far from "abstract" in the eyes of those who will be forced to decide whether they should continue payments, and in the eyes of those whose benefits will either stop or serve as lightning rods for lawsuits. "The danger or dilemma of the plaintiff [and here, the defendant]" is clearly present, and is "not contingent on the happening of hypothetical future events." *City of Nashville v. Snow*, 204 Ga. 371, 377 (49 SE2d 808) (1948). Indeed, the danger to all parties in this case will continue to grow until this court faces up to this issue.

The majority states that it will not give advisory opinions. This court has, however, ruled upon declaratory judgments in which the controversy was based on fewer facts, and events far more hypothetical than this case presents. See *Monte Carlo Parties, Ltd. v. Webb*, 253 Ga. 508 (322 SE2d 246) (1984). The courts in this state have no *constitutional* "case or controversy" requirement as a justiciability threshold, as federal courts do. I would conclude, from cases such as *Monte Carlo*, supra, that there is either a more relaxed standard in our courts than in the federal courts, or that our law provides for exceptions to the normal justiciability standards.[1]

If we do have a generally more relaxed standard, this case, as shown above, clearly fits within justiciability standards. If there is only a declaratory judgment exception to the justiciability standard, I would expand that exception to fit cases such as this which present issues of great public interest and are based upon serious conflicts. See Arrington v. State ex rel. Parsons, 422 S2d 759 (Ala. 1982); State ex rel. McLeod v. McInnis, 295 SE2d 633 (S.C. 1982).

The United States Supreme Court has, on occasion, reached the merits of cases which were factually moot. See Storer v. Brown, 415 U. S. 724 (94 SC 1274, 39 LE2d 714) (1974). This court has recognized that in some such instances, the construction of a statute, and an analysis of the statute relative to the constitution, "will have the effect of simplifying future challenges," so that the need for judicial economy allows the court to reach the merits. *Poythress v. Moses*, 250 Ga. 452, 453 (298 SE2d 480) (1983). This court can walk places where

---

[1] Much of the holding of *Monte Carlo*, supra, was based upon depositions explaining the financial transactions involved in parties as they might have taken place, or as they might take place in the future. [i.e.] "The second format used by Monte Carlo *would* violate the law." Id. at 509. (Emphasis supplied.)

a superior court cannot tread when, in addition to the factor of greater judicial economy, "the public interest will be served." *Brown v. Housing Auth.*, 240 Ga. 647, 653 (242 SE2d 143) (1978). "Because the rights of the public are involved, we [should] proceed to the merits, including consideration of the Constitution, to the extent possible." Id.

I believe that this court is not only entitled, but is also obligated, to reach the merits of this case. I would not leave ERS, the taxpayers, and the retirees twisting in the wind as the court does today.