The Honorable Doug Wood State Representative P.O. Box 7078 Sherwood, Arkansas 72116
Dear Representative Wood:
This is in response to your request for an opinion on the legality of a proposed "bingo concept." Specifically, you ask whether a failure of consideration would exist to "exempt [the game] from the definition of a lottery," where a nonprofit corporation elects to provide bingo games for its members, or the general public, and in furtherance of this objective pays a fee to a professional bingo operator to conduct the games, but does not require or accept any consideration from the players, even though prizes are awarded by the operator. You also ask whether it makes any difference that the fee paid to the operator does not come from membership dues, but from ordinary sales revenue of the organization, and whether it makes any difference if the organization is nonprofit or for profit. Finally, you ask whether the term "lottery" should be broadly interpreted or narrowly construed by the Arkansas Supreme Court.
It is my opinion that the question you have raised will be one of fact in each instance. It is my opinion, generally, however, that if consideration is ultimately paid by the participants, no matter how indirectly, consideration exists sufficiently to render the activity unlawful in Arkansas. See, e.g., Monte Carlo Parties, Ltd. v. Webb, 253 Ga. 508, 322 S.E.2d 246 (1984).
It is my opinion that if the nonprofit corporation pays the operator's fee from membership dues of the bingo participants, sufficient consideration exists. It is also my opinion, depending upon the facts, that even if the bingo operator's fee is paid from "other sales revenue" of the organization, sufficient consideration might exist if this "other sales revenue" is generated from bingo participants.[1] In the former instance, the bingo participants would clearly be ultimately responsible for paying the consideration which makes up the fee from which the prizes are paid. Their membership dues would establish consideration for them to play the game. In the latter instance, the question of consideration would turn upon the exact nature of the "sales revenue" generated, and whether it was generated from bingo participants. For example, in Animal Protection Society of Durham, Inc., v. State, 382 S.E.2d 801
(N.C.App. 1989), the court refused to enjoin prosecution of a bingo operation whereby a bingo operator conducted "free games" on behalf of nonprofit corporations. The games involved a "charitable sales promotion" wherein plastic hair combs (retail value 19 cents) and peppermint candies (retail value 1 cent) were sold for five dollars and one dollar respectively. Upon purchasing these items, the purchasers were given "free" bingo game cards. The court found the plaintiff's assertion that no consideration existed "disingenuous." Additionally, in People v. Williams, 113 N.Y.S.2d 167 (1952), the court held the evidence sufficient to support indictment on lottery charges where the operator permitted each patron to play without charge, but sold two dollar tickets to those patrons desiring a chair to sit in and table space upon which to place their bingo cards. If the "other sales revenue" to which you refer is generated in a fashion similar to that discussed above, or employs any technique whereby the bingo participants ultimately pay consideration, it is my opinion that sufficient consideration exists to render the game a "lottery" for purposes of the Arkansas Constitution, and unlawful under applicable Arkansas statutes. The determination of whether a particular bingo operation is supported by the consideration necessary to render it unlawful, however, will be a question of fact in each instance for the prosecuting attorney to make in light of all the surrounding facts and circumstances.
In response to the final question posed in your request regarding the construction of the term "lottery" as used in the Arkansas Constitution, I should note that the Arkansas Supreme Court has construed this term on many different occasions. See e.g. Scott v. Dunaway, 228 Ark. 943, 311 S.W.2d 305 (1958); Suffield [Shuffield] v. Raney, 226 Ark. 3, 287 S.W.2d 588 (1956); State v. Bass, 224 Ark. 976, 277 S.W.2d 479 (1955); and Longstreth v. Cook, 215 Ark. 72, 220 S.W.2d 433 (1949). This office is in no position to second-guess the court's interpretation of the term. Additionally, I will note in response to your mention of the bill proposed in the 1993 legislative session to exempt bingo games conducted by nonprofit corporations form the definition of a "lottery," that this bill was vetoed by the Governor on April 10, 1993. See also State v. Nelson, 210 Kan. 439, 502 P.2d 841 (1972) (state statute purporting to exempt bingo from lottery prohibition was unconstitutional, as the construction of that constitutional term was a task for the judicial branch).
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] It does not matter, in my opinion, whether the organization is a nonprofit one or a for profit entity.