25421. YEARGIN v. HAMILTON MEMORIAL HOSPITAL et al.

Argued September 9, 1969—Decided October 1, 1969— Rehearing denied November 6, 1969.

*Hugh G. Head, Jr.,* for appellant.

*Jones, Bird & Howell, Trammell E. Vickery, McCamy, Minor, Phillips & Tuggle, John T. Minor, III, Pittman & Kinney, H. E. Kinney,* for appellees.

FELTON, Justice. On September 20, 1968, the plaintiff applied for appointment to the active medical staff of the Hamilton Memorial Hospital of Dalton, Georgia, operated by the Dalton-Whitfield County Hospital Authority, a body corporate under the laws of Georgia. At the end of the application the following certification by the applicant was signed: "Certification by Applicant. 'As a part of this application for appointment, I further certify that I will abide by the by-laws, rules and regulations of the Dalton-Whitfield County Hospital Authority and the Medical Staff of Hamilton Memorial Hospital in effect at this time and as hereinafter amended. I further understand that this appointment, if granted, is for the period of one year only, or until the end of the fiscal year of Hamilton Memorial Hospital, whichever period occurs first. I understand that privileges granted me upon my initial appointment are provisional for a period of not less than one year.' This *12th* day of *June,* 1968. [Signed] L. C. Yeargin, M. D." Attached to and forming a part of the application is a list of the privileges applicant requested. At the top of the page is the following statement: "All appointments and privileges granted become final upon approval by the Dalton-Whitfield County Hospital Authority. Procedures not specifically listed shall be categorized with procedures of similar magnitude on the decision of the chief of the department involved."

On December 30, 1968, Doctor Yeargin received the following letter from "Hamilton Memorial Hospital, By Norman D. Burkett, Administrator": "Dear Doctor Yeargin: The governing body of Hamilton Memorial Hospital has approved your application for appointment to the Medical and Dental Staff of Hamilton Memorial Hospital for the fiscal year 1968-1969 and has accorded you those privileges which have been recommended

by action of the Medical and Dental Staff and Joint Conference Committee and previously transmitted to you. Pursuant to the bylaws of the Medical and Dental Staff it is necessary that I secure your signature to the enclosed form evidencing your willingness to abide by the by-laws, rules and regulations of the Dalton-Whitfield County Hospital Authority and the Medical and Dental Staff of Hamilton Memorial Hospital. We respectfully call to your attention the requirement of the by-laws that the enclosed form be executed within one week." On January 6, 1969, Doctor Yeargin wrote the Hospital the following letter of acceptance of the appointment which was identical to the form sent to him by the Hospital Administrator, with the exception of the qualifying words in brackets in the doctor's letter of acceptance: "[Except bylaws, rules and regulations, and action taken by the Medical staff and the Authority against the public interest, the laws of Georgia and the Constitution of the United States.]" Appellant continued to refuse to abide by the requirements of the hospital which resulted in his being denied all privileges.

In response to the above-indicated response to the actions by the hospital authorities, Doctor Yeargin made no complaint that he had been approved for less categories than he requested or that the hospital had discriminated against him in denying him certain categories or denied him a hearing or right of appeal, or that the restricting rules were unreasonable. Neither did Doctor Yeargin request to be granted all categories, which seems inconsistent with his only contention in the case which is that he is entitled to a free hand in treating his patients in the hospital without any single restriction whatsoever. Because he was not granted this unqualified right he instituted this action. In his application he agreed to agree with the hospital's position, but we know of no rule which would prevent him from changing his mind to his advantage. The contention of Doctor Yeargin is that there should be no restriction upon him by the State after a license is issued to him, *not* that the provisions by the various Acts and authorized delegations of power are illegal.

Appellant plants his case upon Acts of the General Assembly codified in *Code Ann.* § 84-907 where it is provided that if an

applicant for a medical license is found qualified by the State Board of Medical Examiners "he shall be eligible to receive a license . . . giving him *absolute authority* to practice medicine in this State." (Emphasis supplied). This contention has been repudiated by decisions of this court, the United States Supreme Court, and others.

It was stated in *Hughes v. State Board of Examiners,* 162 Ga. 246, 256 (134 SE 42): "With reference to the criticism directed against the Act that it would prevent a physician from the right to practice, though he might otherwise be qualified, and that it would deprive him of a valuable property right, it is said in 21 R. C. L. 352, II, 3, that 'The right to practice medicine is . . . a valuable property right, in which, under the Constitution and laws of the State, one is entitled to be protected and secure. On the other hand, the preservation of public health is one of the duties devolving on the State as the sovereign power, and the discharge of this duty is accomplished by means of the exercise of the inherent police power of the sovereign. Thus is presented a conflict between the right of a citizen to follow a profession, and the right of the State to protect the health and welfare of its citizens, but not a very serious conflict, because the outcome is always clear. Every citizen has the undoubted right to follow any lawful calling, business, or profession he may select, subject only to such restrictions as the government may impose for the welfare and safety of society. This right is one of the distinguishing features of republican institutions. Many of the occupations of life may be followed by persons, irrespective of fitness without danger to the public health, or any detriment to the general welfare; others demand special knowledge, training, or experience; and the power of the State to prescribe such restrictions and regulations for those as, in its judgment, shall protect the people from the consequences of ignorance or incapacity, as well as deception and fraud, has never been questioned. This is especially true with respect to the practice of medicine. Nearly everyone, of necessity, consults the physician at some period of life, but few are able to judge his qualifications in point of learning and skill; and because of the importance of the interests committed to his

care, involving health and life, it is perfectly clear that the State may interfere with the right of the individual and place restrictions and regulations on the practice of medicine. A statute regulating the right to practice medicine, but leaving the field open to all who possess the prescribed qualifications, does not abridge the privileges or immunities of citizens.' See Dent v. West Va., 129 U. S. 114 (9 SC 231, 32 LE 623) and other cases cited." To the same effect see Hayman v. City of Galveston, 273 U. S. 414 (47 SC 363, 71 LE 714; Hawker v. New York, 170 U. S. 189, 192 (18 SC 573, 42 LE 1002)). In the case next above cited the court said: "In the management of a hospital, quite apart from its use for educational purposes, some choice in methods of treatment would seem inevitable, and a selection based upon a classification having some basis in the exercise of the judgment of the State board whose action is challenged is not a denial of the equal protection of the laws." For State decisions to the same effect, see 24 ALR2d 850; 40 AmJur2d 856, Hospitals and Asylums, § 8.

The judgment rendered in this case is one which was suggested by the appellees as a gesture of unparalleled good will, fair play and cooperation. It was a literal "second mile" performance to insure the protection of the appellant and his patients until the final decision in the case. Whether this attitude will continue in view of our decision in this case is of course beyond our power to control, but we can at least hope that after the battle is over the spirit demonstrated above will pervade the peace conference. In saying this, the writer is speaking for himself alone.

Speaking for the court, the trial judge did not err in holding in accordance with the foregoing opinion.

*Judgment affirmed. All the Justices concur.*