34298. THE STATE v. MAJOR et al.

JORDAN, Justice.

The only question presented in this appeal is the constitutionality of Code § 96-602 (Ga. L. 1970, p. 172; Ga. L. 1973, p. 196) which prohibits the "scalping" of tickets to sports events. Code § 96-602 provides that: "It shall be unlawful for any person to sell, or offer for sale, any ticket of admission or other evidence of the right of entry to any football game, basketball game, baseball game, soccer game, hockey game, or golf tournament for a price in excess of the price printed on the ticket: Provided, however, that a service charge, not to exceed $1, may be charged when tickets or other evidences of the right of entry are sold by an authorized ticket agent through places of established businesses licensed to do business by the municipality or county, where applicable, in which

such places of business are located."

Each of the three defendants in this case were accused of selling at an illegal price admission tickets to a football game played between the Atlanta Falcons and the Minnesota Vikings at the Atlanta-Fulton County Stadium. Two defendants allegedly sold two $9 tickets for $20 each. The third defendant allegedly sold two $15 tickets for $20 each. Defendants filed motions to quash their accusations on the ground that Code § 96-602 was unconstitutional. After hearing arguments on this motion, the trial court found the statute to be contrary to the due process clause of the Georgia Constitution because it unduly interfered with the "private property right of disposing of one's property at a non-exorbitant, non-fraudulent, non-extortionate price set by him."

The state now appeals the order of the trial court which declared Code § 96-602 unconstitutional and granted defendants' motions to quash their accusations.

The controlling issue on appeal is whether the state may constitutionally regulate under its general police power the resale of tickets to certain sports events. The threshold question in this examination is which test the court should use in reviewing the constitutionality of this economic legislation. Relying heavily on the case of Tyson & Bro. v. Banton, 273 U. S. 418 (47 SC 426, 71 LE 718) (1927), appellees argue that the state must justify an intrusion into the constitutionally protected rights of due process and freedom to contract by showing that the business it seeks to regulate is "affected with the public interest."

In Tyson, the United States Supreme Court reviewed a New York statute which prohibited the resale of tickets for theaters or other places of entertainment at a price in excess of fifty cents above the price printed on the face of the ticket. The court held that the power to fix prices existed only where the business or the property involved had become "affected with a public interest" and, being unable to find that the resale of amusement tickets was such a business, concluded that the state's regulation was in violation of the due process clause of the Fourteenth Amendment of the Federal Constitution.

Appellant contends that the correct standard of

review is found in Nebbia v. New York, 291 U. S. 502 (54 SC 505, 78 LE 940) (1934). Decided just seven years after Tyson, the court admitted that the concept of "affected with a public interest" was not susceptible of definition and formed an unsatisfactory test of the constitutionality of legislation directed at business practices and prices. In reviewing the power of a state to regulate business prices, the United States Supreme Court states that: "So far as the requirement of due process is concerned, and in the absence of other constitutional restriction, a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adopted to its purpose. The courts are without authority either to declare such policy, or, when it is declared by the legislature, to override it. If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied, and judicial determination to that effect renders a court *functus officio.*" Id. at 537. The rejection of Tyson continues in Gold v. DiCarlo, 235 FSupp. 817 (S.D.N.Y. 1964) which considered a New York statute which made it unlawful to resell a ticket to a public amusement event at a price of more than $1.50, plus tax, in excess of the price printed on the ticket. Although this legislation was essentially identical to the statute rejected in Tyson, the court held that the Supreme Court's previous decision did not bar the reconsideration of this question by the district court because the Tyson test had been repudiated, citing Nebbia, Olsen v. Nebraska, 313 U.S. 236 (61 SC 862, 85 LE 1305) (1949), and Ferguson v. Skrupa, 372 U. S. 726 (83 SC 1028, 10 LE2d 93) (1963). The court stated that the correct test of constitutionality is "whether the method of regulation embodied in the statute bears a rational relation to a constitutionally permissible object." Id. at 820. Applying the "reasonable relationship" standard, the court held the New York statute valid, and the decision was affirmed in a *per curiam* opinion of the Supreme Court. Gold v. DiCarlo, 380 U. S. 520 (85 SC 1332, 14 LE2d 266) (1965).

Although subsequent state court decisions have split on this question, it now appears that contrary to its earlier

decision in Tyson the United States Supreme Court has recognized a legitimate state interest in the regulation of the resale price of tickets to places of entertainment and amusement. Compare People v. Patton, 57 Ill. 2d 43 (309 NE2d 572) (1974), with Estell v. City of Birmingham, 291 Ala. 680 (286 S2d 872) (1973).

By prohibiting the practice of "scalping" tickets, Code § 96-602 is reasonably related to this proper legislative objective and consequently does not violate the due process clause of either the State or Federal Constitution. This statute puts all sports fans on an equal footing in the race to the ticket window.

The order of the trial court held that Code § 96-602 could not accomplish its stated purpose "to regulate the sale of admission tickets to athletic contests. . ." since the price the sports industry set for each ticket was not regulated. If the legislature thought that this regulation was sufficient to accomplish its objectives, it is not a proper consideration for the trial court to hold that prices charged by sports promoters also require regulation. Gold v. DiCarlo, supra. The legislature need not cover the whole field of possible abuses in order to render constitutional a more limited form of regulation. Farmers & Merchants Bank v. Federal Reserve Bank, 262 U. S. 649 (43 SC 651, 67 LE 1157) (1923). Nor is a legislature required to establish a perfect classification, and the fact that the distinctions drawn in a statute may be imperfectly related to the goals desired does not make the statute invalid. *St John's Melkite &c. Church v. Commr. of Revenue,* 240 Ga. 733 (242 SE2d 108) (1978).

Appellees' contentions that Code § 96-602 deprives a ticketholder of his property right in the ticket by placing criminal sanctions on his right to contract to resell the ticket at a price acceptable to him is without merit. This argument is no different from the attacks against the state's bingo regulation statute rejected in *St. John's Melkite &c. Church v. Commr. of Revenue,* supra, at 740, where we held "...The right to contract (to the extent it exists) is limited to a right to enter into lawful contracts. The state has made the contracts covered by this section unlawful through a valid exercise of its police power."

Code § 96-602 does not violate the provisions of either

our State or Federal Constitution, and the trial court erred in declaring this statute unconstitutional.

*Judgment reversed. All the Justices concur, except Hill, J., who is disqualified.*

·ARGUED JANUARY 16, 1979 — DECIDED MARCH 6, 1979.

*Hinson McAuliffe, Solicitor, Charles Hadaway, Assistant Solicitor,* for appellant.

*Moulton, Carriere, Cavan & Maloof, J. Wayne Moulton,* for appellees.

*Arthur K. Bolton, Attorney General, W. Davis Hewitt, Staff Assistant Attorney General,* amicus curiae.