**Gary M. SILVERSTEIN, D.O., David J. Conaway, D.O., and Richard L. Lieberman, D.O.**

**v.**

**GWINNETT HOSPITAL AUTHORITY, Medical Staff of the Gwinnett Hospital System, Worth L. Thompson, Richard Sikes, Jeanine Gullett, Linda Burdine Price, Elwyn D. Carswell, Roy B. Payne, Sr., Ken O. Logue, B. Doug Etheridge and Lillian Webb.**

Civ. A. No. C86-1413A.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 30, 1987.

Susan A. Cahoon, Kilpatrick & Cody, Atlanta, Ga., for plaintiffs.

Michael Ross, King & Spalding, Atlanta, Ga., Webb, Fowler & Tanner, Lawrence-

ville, Ga., Sidney Wheeler, Long, Weinberg, Ansley & Wheeler, Atlanta, Ga., for defendants.

G. ERNEST TIDWELL, District Judge.

## ORDER

The above-styled matter is before the court on two motions for summary judgment: one on behalf of all plaintiffs and one on behalf of all defendants. Also before the court is a motion filed by the American Osteopathic Association for leave to file a brief *amicus curiae*. The court grants this latter motion. Defendants' response to the motion incorporates a response to the substance of the *amicus* brief and thus there is no need for defendants to file any further response.

### Factual Background

Each of the plaintiffs is an osteopathic physician (D.O.) licensed to practice medicine in the state of Georgia. The Gwinnett Hospital Authority (the "Hospital Authority") is a public corporation established pursuant to the Georgia Hospital Authorities Law, O.C.G.A. §§ 31–7–70 *et seq.* The Medical Staff of the Gwinnett Hospital System (the "Medical Staff") is an unincorporated association of physicians and dentists admitted to staff privileges in the Gwinnett Hospital System. The remaining nine defendants (the "Individual Defendants") are current or former members of the Hospital Authority.

Each of the plaintiffs has applied for and been denied admission to the Medical Staff. The ground for denial of each was failure to meet the "Basic Qualifications" for admission to the Medical Staff as set forth in Article III, Section 1 of the Bylaws Provisions, Rules and Regulations of the Medical Staff (the "Bylaws"). Approved by the Hospital Authority, Article III, Section 1 of the Bylaws provides in pertinent part as follows:

#### Membership

Section 1. Basic Qualifications

Subsection 1. Effective March 24, 1981, applicants for membership on the Medical Staff shall be physicians or dentists licensed by the Composite State Board of Medical Examiners for the State of Georgia.

Subsection 2. Physicians shall have completed training requirements for certification by their respective American Specialty Board and shall have completed a post-graduate training program approved by the Accreditation Council for Graduate Medical Education (formerly known as Liaison Committee for Graduate Medical Education) ... This qualification does not apply to practitioners who have already been granted privileges as of the date of enactment (September 28, 1983).

Plaintiffs allege that Subsection 2 discriminates against osteopathic physicians (D.O.'s) since the American Specialty Boards and the Accreditation Council for Graduate Medical Education (ACGME) are allopathic organizations.

D.O.'s and allopathic physicians (M.D.'s) are distinguished by their different medical training and philosophies. Osteopathy is a "system of therapy ... based on the theory that the body is capable of making its own remedies against disease and other toxic conditions when it is in its normal structural relationship and has favorable environmental conditions and adequate nutrition." Dorland's Illustrated Medical Dictionary 1107 (25th ed. 1974). Allopathy is "a term applied to that system of therapeutics in which diseases are treated by producing a condition incompatible with or antagonistic to the condition to be cured or alleviated." *Id.* at 59. Both D.O.'s and M.D.'s can be licensed to practice medicine in the state of Georgia. O.C.G.A. § 43–34–20(3).

Because of the differences in medical philosophies, there are differences in training for D.O.'s and M.D.'s. The emphasis in osteopathy on the relationship between structure and function requires osteopaths to have special skills in recognizing and correcting structural problems through manipulative therapy. To obtain their basic medical training, D.O.'s attend medical schools accredited by the American Osteo-

pathic Association (AOA). M.D.'s, on the other hand attend schools accredited by the American Medical Association (AMA). Post-graduate training (internship and residency training) in osteopathy is obtained through AOA accredited programs and institutions, while such training in allopathy is obtained through ACGME accredited programs and institutions. The ACGME does not accredit the same programs or institutions that the AOA accredits with the exception of some post-graduate training programs sponsored by the United States Armed Services.

Following successful completion of post-graduate training, osteopaths are certified by the American Osteopathic Boards while allopaths are certified by American Specialty Boards. Persons with their basic medical education in osteopathy may obtain post-graduate training in ACGME accredited programs and become certified by an American Specialty Board. On the other hand, persons with their basic education in allopathic medicine, are not eligible to participate in AOA accredited post-graduate programs or to receive certification by any American Osteopathic Board.

Plaintiffs have all completed four years of osteopathic medical school and have completed the post-graduate work required for certification by their respective American Osteopathic Boards. Dr. Silverstein has been certified in ophthalmology by the American Osteopathic Board of Ophthalmology and Otolaryngology. Dr. Lieberman has been certified in otolaryngology/head and neck surgery and facial plastic surgery by the American Osteopathic Board of Ophthalmology and Otolaryngology. Dr. Conaway has been certified in orthopedic surgery by the American Osteopathic Board of Orthopedic Surgery.

Since none of these plaintiffs has received post-graduate training in a program approved by the ACGME or been certified by an American Specialty Board, they were all refused admission to the Medical Staff. Plaintiffs contend that the Bylaws pursuant to which they were denied admission to the Medical Staff are violative of the equal protection and due process clauses of both the Constitution of the United States and the Constitution of the State of Georgia. They also allege that the Bylaws violate Georgia's anti-discrimination statute, O.C.G.A. § 31–7–7(a). All plaintiffs and all defendants move for summary judgment on all claims.

There are no factual issues that would preclude the grant of summary judgment. Each of plaintiffs' claims in this case can be decided as a matter of law.

### I.  Equal Protection

A.  Federal Constitution

It is clear that the Bylaws treat physicians trained only in osteopathic medicine differently than those trained in allopathy. Since no fundamental right or suspect classification is implicated, the Bylaws in question must be presumed to be constitutional unless it appears that they are not rationally related to any legitimate state interest. *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976) (per curiam).

It is uncontroverted that there are differences between the medical philosophies and treatment strategies of M.D.'s and D.O.'s. Defendants assert that "[i]n light of these differences between D.O.'s and M.D.'s, it is certainly rational for a hospital to treat the two groups differently in granting staff privileges, especially because hospitals are increasingly held accountable for the judgment and conduct of its medical staff." (Defendants' Brief in Support of their Motion for Summary Judgment at 25).

In support of their position defendants rely on a recent Fifth Circuit decision which is squarely on point. In *Stern v. Tarrant County Hospital District,* 778 F.2d 1052 (5th Cir.1985) (en banc), *cert. denied,* —— U.S. ——, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986), the court held that the differences between the allopathic and osteopathic schools in their approach to medical treatment provides a rational basis for a public hospital to deny staff privileges to osteopaths who failed to meet the requirement of having two years of post-graduate training in a program accredited by the ACGME. *Id.* at 1061; *see also Hayman v.*

*City of Galveston,* 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714 (1927) (rejected a D.O.'s Fourteenth Amendment challenge of a municipal hospital's regulations which excluded D.O.'s from its staff); *Berman v. Florida Medical Center, Inc.,* 600 F.2d 466 (5th Cir.1979) (rejected a D.O.'s challenge of a private hospital's regulation excluding from its staff physicians who had not completed an AMA residency).

While the court is not bound by the Fifth Circuit decision in *Stern,* that decision along with the Supreme Court decision in *Hayman,* and the former Fifth Circuit decision in *Berman,* compel this court to conclude that defendants' Bylaws are rationally related to legitimate governmental interests.

In an attempt to create a genuine issue of material fact requiring a trial, plaintiffs have presented the declarations of three D.O.'s each essentially concluding that the plaintiffs are as well qualified as physicians with allopathic training in their respective specialties. However, it remains uncontroverted that there are differences between the basic medical philosophies and treatment methods of osteopaths as opposed to allopaths and these differences alone are sufficient to justify the classification under attack. *Stern,* 778 F.2d at 1061.

Accordingly, the court grants defendants' motion for summary judgment on plaintiff's equal protection challenge under the Fourteenth Amendment to the United States Constitution. Plaintiffs' motion for summary judgment on this ground is denied.

### B. State Constitution

Article I, Section 1, Paragraph 2 of the Constitution of the State of Georgia provides:

> Protection to person and property is the paramount duty of government and shall be impartial and complete. No person shall be denied the equal protection of the laws.

This equal protection provision of the Georgia Constitution is substantially equivalent to that of the United States Constitution. *McDaniel v. Thomas,* 248 Ga. 632, 285 S.E.2d 156, 161 (1981). Accordingly, for the reasons enumerated above, the court grants defendants' summary judgment on plaintiff's claim under the Georgia Constitution and denies plaintiffs' motion for summary judgment on this ground.

### *O.C.G.A. § 31–7–7(a)*

■ Plaintiffs allege that the Hospital Authority's bylaw excluding physicians who do not have allopathic post-graduate training violates the following Georgia statutory provision:

> Whenever any licensed medical practitioner shall make application for permission to treat patients in any hospital owned or operated by the state, any political subdivision thereof, or any municipality, the hospital shall act in a nondiscriminatory manner upon such application expeditiously and without unnecessary delay considering the applicant on the basis of the applicant's demonstrated training, experience, and competence....

O.C.G.A. § 31–7–7(a).

Defendants first contend that the Hospital Authority is not a political subdivision of the state and thus is not subject to the provisions of O.C.G.A. § 31–7–7(a). Whether or not the Hospital Authority is a political subdivision of the state, the most recent decision by the Georgia courts mandates the conclusion that the Hospital Authority has not violated the provisions of the antidiscrimination statute. The decision in *Smith v. Gwinnett Hospital Authority,* No. 86–A–0314–1 (Super.Ct. Gwinnett Co.1986), *aff'd mem.,* 256 Ga. XXVIII, 352 S.E.2d 171 (1987), is squarely on point and is dispositive of plaintiffs' claim under Georgia law.

The plaintiff in *Smith,* a D.O. licensed to practice medicine in the state of Georgia, was refused staff privileges by the Gwinnett Hospital Authority, the same entity that refused staff privileges to plaintiffs in the case at bar. The plaintiff in *Smith* was denied staff privileges for the same reasons the plaintiffs in the case at bar were denied such privileges: she did not meet the requirements for certification by the American Specialty Board and she did not

complete post-graduate training in a program approved by the ACGME.

The trial court in *Smith* first held that the Gwinnett Hospital Authority is a public hospital subject to the provisions of O.C.G.A. § 31–7–7(a). The court then held that the Hospital Authority's bylaws requiring certification by an American Specialty Board and completion of post-graduate training in a program approved by the ACGME do not violate the provisions of O.C.G.A. § 31–7–7(a). Since the trial court's decision in *Smith* was affirmed without opinion, it is difficult to determine the ground or grounds for the affirmance. Nevertheless, it is clear that the Georgia Supreme Court affirmed the decision that Georgia law does not forbid the Gwinnett Hospital Authority from excluding from its staff those licensed physicians who do not meet the requirements of the bylaws presently in dispute.

Accordingly, the court grants defendants' motion for summary judgment on plaintiffs' state law claim and denies plaintiffs' motion for summary judgment on this claim.

## II. Due Process

### A. Federal Constitution

To establish their due process claim, plaintiffs must first demonstrate that the regulation in question deprives them of some liberty or property interest. *See e.g. Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). Binding precedent in this circuit indicates that plaintiffs have a constitutionally protected liberty interest in obtaining staff privileges. The former Fifth Circuit has held "that a physician in private practice denied staff privileges in a hospital that is subject to the fourteenth amendment possesses a protectible 'liberty' interest that can ground a complaint of such denial." *Burkette v. Lutheran General Hospital*, 595 F.2d 255 (5th Cir.1979) (citing *Shaw v. Hospital Authority*, 507 F.2d 625 (5th Cir.1975)).

Since there is a liberty interest implicated, defendants' bylaws must be rationally related to some legitimate governmental interest. When examining state economic regulations in light of the due process clause, the courts have exhibited great deference to the judgments of the state and local governments. *See e.g. Sosa v. Board of Managers of Val Verde Memorial Hospital*, 437 F.2d 173, 176 (5th Cir.1971) ("[t]he governing board of a hospital must ... be given great latitude in prescribing the necessary qualifications for potential applicants [for staff privileges]."). As the Supreme Court noted in *Williamson v. Lee Optical*, 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955), "[t]he day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought."

Under the deferential review appropriate in the case at bar, the bylaws in question pass constitutional muster. It would be inappropriate for this court to second guess the Hospital Authority's position that the bylaws in question promote the legitimate interest in providing quality health care.

Accordingly, the court grants defendants' motion for summary judgment on plaintiffs' substantive due process claim and denies plaintiffs' motion for summary judgment on this issue. *See also, Hyde v. Jefferson Parish Hospital District No. 2*, 764 F.2d 1139 (5th Cir.1985) (upheld hospital's denial of staff privileges to an anesthesiologist over a substantive due process challenge); *Illinois Psychological Association v. Falk*, 818 F.2d 1337 (7th Cir.1987) (rejected a substantive due process challenge to an Illinois administrative regulation that denied hospital privileges to all psychologist).

### B. State Constitution

As with the equal protection provision of the Georgia Constitution, there is no indication that the analysis under the due process provision of the Georgia Constitution will yield a different result than that under the federal constitution. *Cf. Jenkins v. Manry*, 216 Ga. 538, 118 S.E.2d 91 (1961).

Accordingly, the court grants defendants' motion for summary judgment on plaintiffs' state due process claim and denies plaintiffs' motion for summary judgment on this claim.

### Summary

The court grants the AOA's motion to file a brief *amicus curiae*. The court grants defendants' motion for summary judgment on all counts of plaintiffs' amended complaint; claims pursuant to the state and federal equal protection and due process clauses and a state law claim pursuant to O.C.G.A. § 31–7–7(a). Plaintiffs' motion for summary judgment is denied as to all of these same claims. Plaintiffs' request for attorneys' fees pursuant to state law and 42 U.S.C. § 1988 is also denied.

Because of the above rulings, the court need not address the individual defendants' claims of qualified immunity nor the defendants' contention that plaintiff Conaway's section 1983 claim is barred by the applicable statute of limitations.

The Clerk of Court is directed to enter judgment for all defendants and against all plaintiffs.