Gary M. SILVERSTEIN, D.O., David J. Conaway, D.O., and Richard L. Lieberman, D.O., Plaintiffs–Appellants,

v.

GWINNETT HOSPITAL AUTHORITY, Medical Staff of the Gwinnett Hospital System, Worth L. Thompson, Richard Sikes, Jeanine Gullett, Linda Burdine Price, Elwyn D. Carswell, Roy B. Payne, Sr., Ken O. Logue, B. Doug Etheridge and Lillian Webb, Defendants–Appellees.

No. 87–8926.

United States Court of Appeals, Eleventh Circuit.

Dec. 27, 1988.

---

Matthew J. Mitten, Kilpatrick & Cody, Susan A. Cahoon, Atlanta, Ga., for plaintiffs-appellants.

James N. Gorsline, King & Spalding, Michael Eric Ross, J.M. Hudgins, IV, Sidney F. Wheeler, Long, Weinberg, Ansley & Wheeler, Atlanta, Ga., for defendants-appellees.

Before TJOFLAT and FAY, Circuit Judges, and SHARP *, District Judge.

---

* Honorable G. Kendall Sharp, U.S. District Judge for the Middle District of Florida, sitting by designation.

SHARP, District Judge:

This case challenges the constitutionality of the Hospital Authority of Gwinnett County, Georgia (GHA) bylaw provision, which requires specific postgraduate specialty training or residency in order for physicians to be eligible for admission to the Medical Staff of the Gwinnett Hospital System (Medical Staff). Plaintiffs-appellants, doctors of osteopathy (D.O.s) as opposed to allopathic physicians (M.D.s), do not meet the postgraduate training requirements of the subject bylaw. These osteopaths contend that their inability to be admitted to the Medical Staff, despite comparable osteopathic postgraduate training, violates equal protection and due process under the United States and Georgia Constitutions as well as a Georgia statute prohibiting discrimination in the review of applications for public hospital staff privileges.

On cross motions for summary judgment, the district court granted the motion of defendants-appellees and denied the motion of plaintiffs-appellants. *Silverstein v. Gwinnett Hospital Authority*, 672 F.Supp. 1444 (N.D.Ga.1987). The district court determined that the bylaw provision in question was rationally related to the legitimate government interest of quality health care because of the differences in the postgraduate specialty training of osteopaths and allopaths. The bylaws, therefore, were held valid under the equal protection and due process clauses of the Fourteenth Amendment and the Georgia Constitution. The district court also concluded that the Georgia antidiscrimination statute, regarding review of public hospital staff applications, was not violated and that an apposite Georgia case was dispositive of this issue.

The pertinent facts are uncontroverted. Each appellant graduated from a four-year osteopathic medical school and completed specialized postgraduate training in a program accredited by the American Osteopathic Association (AOA). Appellants have been certified by the appropriate American Osteopathic Boards for their respective specialities. Dr. Silverstein is an ophthalmologist, Dr. Conaway is an orthopedic surgeon, and Dr. Lieberman is an otolaryngologist. Appellants are licensed to practice medicine in Georgia as D.O.s.

Appellee GHA is a public corporation created pursuant to Georgia Hospital Authorities Law. O.C.G.A. §§ 31-7-70-96 (1985). The Medical Staff is an unincorporated association of physicians and dentists admitted to staff privileges in the Gwinnett Hospital System. The individual appellees are current or former GHA members, who approved and/or enforced the subject bylaw provision.

As adopted by GHA, the bylaw in question provides in relevant part the following qualifications for members of the Medical Staff:

## Membership

Section 1. Basic Qualifications

Subsection 1. Effective March 24, 1981, applicants for membership on the Medical Staff shall be physicians or dentists licensed by the Composite State Board of Medical Examiners for the State of Georgia.

Subsection 2. Physicians shall have completed training requirements for certification by their respective American Specialty Board and shall have completed a post-graduate training program approved by the Accreditation Council for Graduate Medical Education (formerly known as Liaison Committee for Graduate Medical Education) ... This qualification does not apply to practitioners who have already been granted privileges as of the date of enactment (September 28, 1983).

Bylaws, Rules and Regulations of the Medical Staff of the Gwinnett Hospital System, art. III, § 1. Appellants assert that Subsection 2 of this bylaw (hereinafter Subsection 2) discriminates against D.O.s as to Medical Staff privileges because the American Specialty Boards and the Accreditation Council for Graduate Medical Education (ACGME) are allopathic organizations. They argue that D.O.s are excluded categorically from the Medical Staff because their postgraduate specialty training

and accreditation is by osteopathic organizations.

Generally, osteopathy assists the body's remedial capabilities by focusing on the interaction of the biological systems and stressing musculoskeletal manipulative therapy, while allopathy treats disease by producing effects incompatible with the condition to be alleviated. Appellants and appellees acknowledge the recognized differences in the philosophies and training of osteopathy and allopathy. Although Georgia licenses both D.O.s and M.D.s to practice medicine, the state distinguishes between the two medical educations, referencing them separately in the licensing statutes. O.C.G.A. §§ 43–34–20(3), 43–34–26 (1984). No nonmilitary osteopathic postgraduate specialty program has sought review by ACGME, an accreditation body which establishes standards and evaluates allopathic postgraduate specialty programs in the United States. Consequently, ACGME has not had the opportunity to evaluate osteopathic postgraduate specialty programs such as those undertaken by appellants.

Individuals with basic osteopathic medical education, accredited by AOA, may obtain postgraduate training in ACGME-accredited programs and certification by an American Specialty Board. In contrast, graduates of allopathic medical schools, accredited by the American Medical Association (AMA), are ineligible to participate in AOA-accredited postgraduate programs or to be certified by an American Osteopathic Board. Significantly, four of the five D.O.s, who presently serve on the active Medical Staff, complied with Subsection 2 by completing ACGME-accredited postgraduate programs and receiving American Specialty Board certification, while one was admitted under the grandfather provision.

Appellants recognize that Subsection 2 was enacted in an effort to upgrade the standards of the Gwinnett Hospital System. Although they complain that the bylaw provision precludes them from admission to the Medical Staff, appellants are not restricted from the practice of their respective specialties in Georgia, and they have staff privileges in other hospitals in the proximate, metropolitan Atlanta area. Each appellant was denied admission to the Medical Staff because of his failure to meet the postgraduate specialty training criteria of Subsection 2. Thereafter, appellants exhausted their procedural appellate rights within the Gwinnett Hospital System. On appeal, appellants pursue their arguments that Subsection 2 violates equal protection and due process under the United States and Georgia Constitutions as well as their state statutory claim, regarding antidiscrimination in the review of medical staff applications in a public hospital.

Since there was no genuine issue as to material facts and a declaratory judgment as a matter of law was sought, the parties and the district court agreed that summary judgment was appropriate. Fed.R.Civ.P. 56(c). Corresponding to directed-verdict analysis, the district court should grant summary judgment if there is but one reasonable conclusion under the substantive law governing the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202, 213–14 (1986); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273–74 (1986); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Dominick v. Dixie National Life Insurance Co.*, 809 F.2d 1559, 1572 (11th Cir.1987). In its plenary review of a grant of summary judgment, the appellate court must apply the same legal standards used by the district court. *Livernois v. Medical Disposables, Inc.*, 837 F.2d 1018, 1021–22 (11th Cir.1988); *Carlin Communication, Inc. v. Southern Bell Telephone & Telegraph Co.*, 802 F.2d 1352, 1356 (11th Cir.1986). This court has concluded that the agreed facts as well as reasonable inferences drawn therefrom do not create a genuine issue of material fact warranting trial. *See Augusta Iron & Steel Works, Inc. v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir.1988) (per curiam); *Carlin Communication*, 802 F.2d at 1356; *Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296–97 (11th Cir.1983). Therefore, the federal and state equal protection and due

process arguments as well as the state statutory claim must be analyzed under the controlling substantive law in order to determine if the decision by the district court was correct as a matter of law. *Everett,* 833 F.2d at 1510; *see* Fed.R.Civ.P. 56(c).

## I. Equal Protection

### A. *Fourteenth Amendment*

 The inception of equal protection analysis is the disparate treatment of similarly situated individuals by a governmental unit. *Johnson v. Smith,* 696 F.2d 1334, 1336 (11th Cir.1983); *see New York City Transit Authority v. Beazer,* 440 U.S. 568, 587–88, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587, 604 (1979). Absent the implication of a fundamental right or suspect classification, a local economic regulation is presumed constitutional under equal protection if it is rationally related to a legitimate state interest. *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511, 516–17 (1976) (per curiam); *Friedman v. Rogers,* 440 U.S. 1, 17, 99 S.Ct. 887, 898, 59 L.Ed.2d 100, 114–15 (1979); *see Maceluch v. Wysong,* 680 F.2d 1062, 1064–65 (5th Cir.1982) (per curiam). The former Fifth Circuit has held that the rational basis test applies to eligibility requirements for hospital staff privileges. *Shaw v. Hospital Authority of Cobb County,* 507 F.2d 625, 628 n. 3 (5th Cir. 1975) (*Shaw I*);[1] *see Maceluch,* 680 F.2d at 1065. Rational basis for an economic regulation is established easily and is accorded minimal scrutiny. *Metropolitan Life Insurance Co. v. Ward,* 470 U.S. 869, 881, 105 S.Ct. 1676, 1683, 84 L.Ed.2d 751, 761 (1985); *Cotton States Mutual Insurance Co. v. Anderson,* 749 F.2d 663, 669 (11th Cir.1984); *see also Woods v. Holy Cross Hospital,* 591 F.2d 1164, 1173 (5th Cir.1979) ("A court applying the rational basis test will generally defer to a legislative holding that the stated end will be accomplished by the chosen means...."). In local economic regulation, wide latitude is given to the governmental entity and only a "wholly

arbitrary act" overcomes equal protection rational basis. *Dukes,* 427 U.S. at 303–04, 96 S.Ct. at 2517, 49 L.Ed.2d at 517; *see City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985); *Alamo Rent–A–Car, Inc. v. Sarasota–Manatee Airport Authority,* 825 F.2d 367, 370 (11th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1022, 98 L.Ed.2d 987 (1988); *Cotton States,* 749 F.2d at 669; *see also Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659, 669 (1981) (Challengers of rational basis " 'must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.' " (quoting *Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171, 184 (1979))).

Appellants argue that the postgraduate training of osteopaths is comparable to that of allopaths and, therefore, that Subsection 2 is not rationally related to the legitimate governmental interest of quality health provision. Appellants do not question GHA's purpose in enacting Subsection 2; they object to the exclusion of D.O.s from the Medical Staff because of their postgraduate training as a means of effectuating GHA's health-care goal. Appellees maintain that significant distinctions exist between the postgraduate specialty training of osteopaths and allopaths and that these dissimilarities are rationally related to GHA's concern for the nature of the health care supplied by the Gwinnett Hospital System.

The Supreme Court and the former Fifth Circuit have recognized the differences in the training of D.O.s and M.D.s and have upheld the exclusion of osteopaths from hospital medical staffs. *Hayman v. City of Galveston,* 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714 (1927); *Berman v. Florida Medical Center, Inc.,* 600 F.2d 466 (5th Cir. 1979). In *Hayman,* the Court explained

---

**1.** The Eleventh Circuit has adopted as binding precedent all decisions by the former Fifth Circuit through September 30, 1981, and all decisions thereafter by Unit B of the former Fifth

Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc); *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

that D.O.s, admitted to practice medicine within the state, were not classified arbitrarily or unreasonably in violation of equal protection by their being precluded from a municipal hospital medical staff:

> We cannot say that a regulation excluding from the conduct of a hospital the devotees of some of the numerous systems or methods of treating diseases authorized to practice in Texas, is unreasonable or arbitrary. In the management of a hospital, quite apart from its use for educational purposes, some choice in methods of treatment would seem inevitable, and a selection based upon a classification having some basis in the exercise of the judgment of the state board whose action is challenged is not a denial of the equal protection of the laws.

*Hayman,* 273 U.S. at 417, 47 S.Ct. at 364, 71 L.Ed. at 717. Resisting a D.O.'s contention that his osteopathic specialty training was comparable to the reasonable qualification of allopathic specialty training required for staff privileges in a private hospital, the former Fifth Circuit considered the D.O. "not in any class of osteopathic as opposed to allopathic physicians, but in that merely of *physicians* who have not served an AMA residency but wish to practice a specialty in defendant's hospital without having done so." *Berman,* 600 F.2d at 467–68 (emphasis in original).

■ While *Hayman* and *Berman* provide sufficient precedent to uphold Subsection 2 on equal protection grounds, appellants have argued that the postgraduate training of D.O.s has undergone innovations, which further validate their claim that osteopathic and allopathic training are comparable. Consequently, these precedential decisions, particularly, *Hayman,* are obsolete. This argument was advanced and rejected in a recent Fifth Circuit case, which is on point as to the federal equal protection claim at issue. *Stern v. Tarrant County Hospital District,* 778 F.2d 1052 (5th Cir.1985) (en banc), *cert. denied,* 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986). Factually similar to the present case, *Stern* involved state-licensed D.O.s, who were denied staff membership at a state hospital because their postgraduate training program was not accredited by ACGME in accordance with hospital by-laws. The court determined that police power authorized the state agency to distinguish rationally between osteopathic and allopathic philosophical and instructional differences. *Stern,* 778 F.2d at 1061; *see also Maceluch,* 680 F.2d at 1066–68; *Oliver v. Morton,* 361 F.Supp. 1262, 1267–68 (N.D.Ga.1973) (justifying as rational state statutes, requiring that physicians accurately identify the origin of their medical degrees to medical consumers as M.D. or D.O.).

"The constitutional test for rationality of a legislative classification, whether the classes be distinguished in the text of the law or in its administration, is whether *any* rational decisionmaker could have so classified." *Stern,* 778 F.2d at 1056 (emphasis in original). Furthermore, the former Fifth Circuit has found that the training of prospective medical staff members is a relevant professional qualification, which may be applied constitutionally to determine eligibility for staff privileges in a public hospital. *Shaw v. Hospital Authority of Cobb County,* 614 F.2d 946, 952 (5th Cir.) (per curiam), *cert. denied,* 449 U.S. 955, 101 S.Ct. 362, 66 L.Ed.2d 220 (1980) (*Shaw II*); *Foster v. Mobile County Hospital Board,* 398 F.2d 227, 230 (5th Cir.1968). "[F]ederal courts do not sit as arbiters of the wisdom or utility" of local economic regulation. *Alamo Rent–A–Car,* 825 F.2d at 370; *see Dukes,* 427 U.S. at 303–04, 96 S.Ct. at 2517, 49 L.Ed.2d at 517. The recognized distinctions between osteopathic and allopathic postgraduate specialty training provide a rational basis for GHA to decide to restrict its Medical Staff to licensed physicians, who have completed ACGME-accredited postgraduate programs and are certified by an American Specialty Board, for the legitimate purpose of assuring and standardizing quality health care. Therefore, this court concludes that Subsection 2 does not violate the equal protection clause of the Fourteenth Amendment.

B. *Georgia Constitution*

Aligned with federal equal protection analysis, the standard of review for eco-

nomic regulation under the Georgia constitutional equal protection provision is rational basis.[2] *Price v. Lithonia Lighting Co.,* 256 Ga. 49, 52, 343 S.E.2d 688, 691 (1986); *see also Price v. Tanner,* 855 F.2d 820 (11th Cir.1988) (The Eleventh Circuit analyzed the constitutionality of the same Georgia statute as did the Georgia Supreme Court in the preceding case and found that it did not violate federal equal protection and that it was rationally related to a legitimate government interest.). The Georgia Supreme Court recently has reiterated this rational basis standard as being " 'that the classification not be arbitrary or unreasonable, and that a fair and substantial relationship exist between the classification and the purpose of the law.' " *Price,* 256 Ga. at 52, 343 S.E.2d at 691 (quoting *Bickford v. Nolen,* 240 Ga. 255, 256, 240 S.E.2d 24, 26 (1977) (citations omitted)); *see also Cannon v. Georgia Farm Bureau Mutual Insurance Co.,* 240 Ga. 479, 482, 241 S.E.2d 238, 241 (1978) ("Under the equal protection guarantee of our State Constitution (Code Ann. § 2–203), classification in legislation is permitted when the classification is based on rational distinctions, and the basis of the classification bears a direct and real relation to the object or purpose of the legislation."). Georgia courts have held that hospital managing authorities, empowered by the legislature to adopt reasonable operational regulations for patient welfare, may designate qualifications for medical-staff physicians beyond licensure required by the state. *See, e.g., Cobb County–Kennestone Hospital Authority v. Prince,* 242 Ga. 139, 249 S.E.2d 581 (1978); *Mitchell County Hospital Authority v. Joiner,* 229 Ga. 140, 189 S.E.2d 412 (1972); *Dunbar v. Hospital Authority of Gwinnett County,* 227 Ga. 534, 182 S.E.2d 89 (1971); *Yeargin v. Hamilton Memorial Hospital,* 225 Ga. 661, 171 S.E. 2d 136 (1969), *cert. denied,* 397 U.S. 963, 90 S.Ct. 997, 25 L.Ed.2d 255 (1970). This court may determine only whether Subsection 2 is an arbitrary and unreasonable regulation for GHA to implement in order to protect the public, unskilled in judging the qualifications of the Medical Staff. *Prince,* 242 Ga. at 146, 249 S.E.2d at 585–86; *Yeargin,* 225 Ga. at 665–66, 171 S.E.2d at 139; *see Home Materials, Inc. v. Auto Owners Insurance Co.,* 250 Ga. 599, 601, 300 S.E.2d 139, 141 (1983). In that Subsection 2 is not arbitrary and bears a rational relation to GHA's concern for quality health care, it does not violate equal protection under the Georgia Constitution.

## II. Due Process

### A. *Fourteenth Amendment*

The essence of Fourteenth Amendment due process analysis is the implication of a liberty or property interest. *Board of Regents v. Roth,* 408 U.S. 564, 571–72, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548, 557–58 (1972). Seeking staff privileges, which entitle a physician to admit patients to a particular hospital, has been held to be a protected liberty interest by the former Fifth Circuit. *Burkette v. Lutheran General Hospital,* 595 F.2d 255, 255–56 (5th Cir.1979); *Shaw II,* 614 F.2d at 950; *Shaw I,* 507 F.2d at 628; *see Northeast Georgia Radiological Associates v. Tidwell,* 670 F.2d 507, 511 (5th Cir. Unit B 1982); *see also Roth,* 408 U.S. at 572, 92 S.Ct. at 2706–07, 33 L.Ed.2d at 558 (The Fourteenth Amendment liberty guarantee includes an individual's right " 'to engage in any of the common occupations of life....' " (quoting *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, 1045 (1923))). Since appellants have not alleged violations of procedural due process, the court's review under substantive due process is "whether the standards set by the hospital authority are reasonable and whether they have been applied without arbitrariness, capriciousness or unreasonableness." *Woodbury v. McKinnon,* 447 F.2d 839, 845 (5th Cir.1971); *see Laje v. R.E. Thomason General Hospital,* 564 F.2d 1159, 1162 (5th Cir.1977), *cert. denied,* 437 U.S. 905, 98 S.Ct. 3091, 57 L.Ed.2d 1134 (1978); *see also West Coast Hotel Co. v. Parrish,* 300 U.S.

---

**2.** "Protection to person and property is the paramount duty of government and shall be impartial and complete. No person shall be denied the equal protection of the laws." Ga. Const. art. I, § 1, para. 2 (1983).

379, 391, 57 S.Ct. 578, 581–82, 81 L.Ed. 703, 708 (1937) (Liberty, cognizable by the Fourteenth Amendment, encompasses health and welfare protection and is subject to regulation, reasonably related to its subject and "adopted in the interests of the community," without offending due process.).

Appellants contend that Subsection 2 denies them substantive due process because D.O.s are excluded from the Medical Staff based upon their postgraduate specialty training, which is unreasonably related to the GHA concern for patient health care. The former Fifth Circuit, however, has recognized that considerable deference must be given to the judgment of a hospital governing body in the selection of its medical staff:

> The governing board of a hospital must therefore be given great latitude in prescribing the necessary qualifications for potential applicants....
>
> . . .
>
> Human lives are at stake, and the governing board must be given discretion in its selection so that it can have confidence in the competence and moral commitment of its staff. The evaluation of professional proficiency of doctors is best left to the specialized expertise of their peers, subject only to limited judicial surveillance. The court is charged with the narrow responsibility of assuring that the qualifications imposed by the Board are reasonably related to the operation of the hospital and fairly administered. In short, so long as staff selections are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered with irrelevant considerations, a court should not interfere.

*Sosa v. Board of Managers of Val Verde Memorial Hospital,* 437 F.2d 173, 176–77 (5th Cir.1971); *see Laje,* 564 F.2d at 1162; *Woodbury,* 447 F.2d at 845; *Foster v. Georgia Board of Chiropractic Examiners,* 257 Ga. 409, 418–19, 359 S.E.2d 877, 883–84 (1987); *cf. Foster,* 398 F.2d at 228–

31 (Hospital bylaws, which required that applicants for the county hospital staff be members of the county medical society and endorsed by at least two members of the active medical staff, were found constitutionally deficient by unreasonably relating to the professional qualifications of physicians and the health care of patients as well as providing the potential for arbitrariness and discrimination.). The court's lack of medical expertise must limit its minimal review to the reasonableness of the standards established by the hospital and the absence of arbitrariness and capriciousness in application. *Laje,* 564 F.2d at 1162; *Woodbury,* 447 F.2d at 845; *see Cotton States,* 749 F.2d at 669. "The hospital, and not the courts, must set the level of competence to be required of staff members." *Laje,* 564 F.2d at 1162; *see Sosa,* 437 F.2d at 176–77.

■ Given the well-defined review standards and the accepted differences in the postgraduate specialty training of D.O.s and M.D.s, the court's assessment of Subsection 2 under substantive due process is facile. Rather than being arbitrary and capricious, this court concludes that GHA's requirements of standardized postgraduate specialty training, accredited by a selected established organization, and specified specialty certification, are reasonably related to the medical-care quality, which GHA has determined that it desires. Appellants are not deprived from pursuing their respective practices in Georgia or on other hospital staffs in metropolitan Atlanta. *Shaw II,* 614 F.2d at 952. Furthermore, compliance with Subsection 2 would make appellants eligible for the Medical Staff. Accordingly, Subsection 2 conforms with substantive due process under the Fourteenth Amendment.

B. *Georgia Constitution*

An individual's right to work is a liberty or property interest protected by the due process clause of the Georgia Constitution.[3] *See State v. McMillan,* 253 Ga. 154, 159–

---

**3.** "No person shall be deprived of life, liberty, or property except by due process of law." Ga. Const. art. I, § 1, para. 1 (1983).

60, 319 S.E.2d 1, 7 (1984). Review of economic legislation under the Georgia Constitution is similar to federal substantive due process analysis; the regulation must be "reasonably related" to a legitimate state interest. *State v. Major*, 243 Ga. 255, 258, 253 S.E.2d 724, 726 (1979). The Georgia Supreme Court also has found that compliance with the federal and state equal protection, rational basis test "amounts to due process of law." *Citizens & Southern National Bank v. Mann*, 234 Ga. 884, 888, 218 S.E.2d 593, 597 (1975) (citing *McLennan v. Aldredge*, 223 Ga. 879, 889, 159 S.E.2d 682, 689 (1968)); *see St. John's Melkite Catholic Church v. Commissioner of Revenue*, 240 Ga. 733, 740, 242 S.E.2d 108, 115 (1978); *Cannon*, 240 Ga. at 481–83, 241 S.E.2d at 240–41. A regulation need not establish a perfect classification and it is not invalidated by distinctions that may be related imperfectly to desired goals. *Major*, 243 Ga. at 258, 253 S.E.2d at 727; *St. John's Melkite Catholic Church*, 240 Ga. at 740, 242 S.E.2d at 115. Based upon the acknowledged differences in the postgraduate specialty training of D.O.s and M.D.s, Subsection 2 is reasonably related to the GHA goal of quality health care and meets the equal protection, rational basis test as discussed herein. This court concludes that Subsection 2 does not violate due process under the Georgia Constitution.

### III. O.C.G.A. § 31-7-7(a)

As appellants' state constitutional contentions, their pendent, Georgia statutory claim was properly within the district court's discretion to consider because that court had jurisdiction over substantial federal claims and the state and federal claims " 'derive[d] from a common nucleus of operative fact.' " *Hill v. Georgia Power Co.*, 786 F.2d 1071, 1077 (11th Cir.1986) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 228 (1966)); *Shahawy v. Harrison*, 778 F.2d 636, 644 (11th Cir.1985), *modified on other grounds*, 790 F.2d 75 (11th Cir. 1986) (per curiam); *L.A. Draper & Son v. Wheelabrator–Frye, Inc.*, 735 F.2d 414,

427 (11th Cir.1984). The statute in question provides in pertinent part:

31–7–7. Refusal or revocation by public hospital of staff privileges.

(a) Whenever any licensed medical practitioner shall make application for permission to treat patients in any hospital owned or operated by the state, any political subdivision thereof, or any municipality, the hospital shall act *in a nondiscriminatory manner* upon such application expeditiously and without unnecessary delay *considering the applicant on the basis of the applicant's demonstrated training, experience, and competence ....*

O.C.G.A. § 31–7–7(a) (1985) (emphasis added). Appellants assert that the indicated statutory language, amending O.C.G.A. § 31–7–7(a), effective July 1, 1984, prevents discrimination against D.O.s in applications for the Medical Staff based upon their postgraduate specialty training and requires individual review of the postgraduate training of each D.O. applicant. *See* O.C.G.A. § 31–7–7(a) (Supp.1984).

Appellees have argued that O.C.G.A. § 31–7–7(a) does not pertain to GHA, which allegedly is not a political subdivision of the state. As the district court determined, this court also need not address whether or not GHA is a political subdivision of the state for purposes of O.C.G.A. § 31–7–7(a) because that conclusion is not necessary for resolution of the antidiscrimination issues before the court. *Silverstein*, 672 F.Supp. at 1447; *see Moor v. County of Alameda*, 411 U.S. 693, 715–17, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596, 613–14 (1973); *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139, 16 L.Ed.2d at 228; *Grant v. County of Seminole*, 817 F.2d 731, 732 (11th Cir.1987) (per curiam). Alternatively, appellees have contended that the threshold requirement of standardized postgraduate specialty training is nondiscriminatory in the traditional sense, which bases discrimination on such factors as race or sex.

A recent Georgia case is dispositive of appellants' allegation that O.C.G.A. § 31–7–7(a) antidiscrimination provisions have been violated in GHA's delineated

postgraduate specialty training requirements for admission to the Medical Staff. *Smith v. Hospital Authority of Gwinnett County*, No. 86–A–0314–1 (Super.Ct. Gwinnett Co.1986), *aff'd mem.*, 256 Ga. XXVIII, 352 S.E.2d 171 (1987). As appellants, the *Smith* plaintiff, a D.O. licensed to practice medicine in Georgia, was refused staff privileges by GHA because she had not met the postgraduate specialty requirements of Subsection 2. The Georgia trial court granted defendants' motion for judgment on the pleadings on the following basis: [4]

> [A] public hospital may deny staff privileges to a physician licensed by the composite State Board of Medical Examiners when said physician does not meet different and/or additional standards of training, experience, and competence as set by the by-laws of the medical staff of a given public hospital for the granting of staff privileges. The Plaintiff takes the position that to be licensed as a medical doctor or doctor of osteopathy automatically entitles the doctor to staff privileges in a *public* hospital. With this the court does not agree. Licensure by the Composite State Board of Medical Examiners does not prohibit a public hospital from establishing by-laws requiring different and/or additional standards of training experience and competency in order for a licensed physician to gain staff privileges in said hospital. In the case at hand, the Gwinnett hospital system requires that an applicant shall have completed training requirements for certification by the American Board of Family Practice and that she shall have completed a post graduate training program approved by the Accreditation Council for Graduate Medical Education. Plain-

tiff has failed to meet either of these requirements.

*Smith*, slip op. at 2 (emphasis in original). *Smith* also held that GHA is a public hospital, subject to O.C.G.A. § 31–7–7, as amended. *Id.*

■ The *Smith* holdings are clear and unambiguous on virtually identical facts to the present case, and the Georgia Supreme Court could have clarified or corrected any points of disagreement. Instead, the Supreme Court of Georgia upon review elected to affirm *Smith* without opinion pursuant to Rule 59 of that court.[5] While " 'proper regard' " has been given to state trial court decisions and adherence accorded to state intermediate appellate courts in the absence of a decision by the state's highest court, an affirmance, even without an opinion, is a Georgia Supreme Court decision, which directs this court. *Finch v. Mississippi State Medical Association, Inc.*, 594 F.2d 163, 165 (5th Cir.1979) (quoting *Commissioner v. Estate of Bosch*, 387 U.S. 456, 464, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886, 893 (1967)); *see In re General Coffee Corp.*, 828 F.2d 699, 701 (11th Cir. 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988); *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir.1983); *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir.1982). It is well settled that federal courts are bound by the interpretation of a state statute by state courts. *Cotton States*, 749 F.2d at 667; *Harris v. Conradi*, 675 F.2d 1212, 1215–16 (11th Cir.1982); *Bank of Heflin v. Miles*, 621 F.2d 108, 113–14 (5th Cir.1980).

■ After examining the postgraduate specialty training, accreditation and certifi-

---

**4.** *See* O.C.G.A. § 9–11–12(c) (1982) (motion for judgment on the pleadings); *see also Bergen v. Martindale-Hubbell, Inc.*, 176 Ga.App. 745, 746, 337 S.E.2d 770, 771 (1985) (" 'To justify the grant of a judgment on the pleadings it is not sufficient that the complaint fails to state a claim on which relief can be granted, but the pleadings must affirmatively show that no claim in fact exists.' " (quoting *Holzman v. National Bank of Georgia*, 144 Ga.App. 710, 710, 242 S.E.2d 299, 300 (1978))), *cert. denied*, 479 U.S. 803, 107 S.Ct. 45, 93 L.Ed.2d 7 (1986).

**5.** Rule 59. Affirmance without opinion.

Affirmance without opinion may be rendered when the court determines one or more of the following circumstances exists and is dispositive of the appeal:

(1) The evidence supports the judgment;

(2) No harmful error of law, properly raised and requiring reversal, appears;

(3) The judgment of the court below adequately explains the decision and an opinion would have no precedential value.

Ga.Sup.Ct.R. 59, Ga.R.Ct.Ann. (1987).

cation that GHA has required in Subsection 2 in relation to O.C.G.A. § 31–7–7(a), *Smith,* affirmed by the Georgia Supreme Court, unequivocally holds that Subsection 2 does not discriminate against D.O.s. Evidencing the apparent availability of compliance with Subsection 2, four D.O.s, who presently serve on the Medical Staff, have acquired the requisite postgraduate training and specialty certification since the effective date of this bylaw provision. Based upon *Smith,* affirmed by the Georgia Supreme Court, the court holds that Subsection 2 does not violate the antidiscrimination provisions of O.C.G.A. § 31–7–7(a).

In summary, this court concludes that Subsection 2 does not transgress equal protection or due process under the United States and Georgia Constitutions, and that it does not offend the antidiscrimination provisions of O.C.G.A. § 31–7–7(a). The district court correctly applied the controlling substantive law in the case. Accordingly, the granting of summary judgment in favor of appellees-defendants by the district court is AFFIRMED.

TJOFLAT, Circuit Judge, specially concurring:

I concur in all parts of Judge Sharp's opinion for the court except part II.A. which addresses appellants' substantive due process claim under the fourteenth amendment. I find nothing in the Constitution that would guarantee appellants the right to practice osteopathy in the Gwinnett County hospital system. As the case law suggests, appellants may have a "liberty" interest in practicing in that system, but such interest is created by state law, not the federal Constitution. Accordingly, the only process they are due under the circumstances is procedural, not substantive. They are entitled to fair consideration of their applications for admission to the medical staff and a rational decision thereon. They have been accorded such treatment here; Judge Sharp's opinion

states, "appellants have not alleged violations of procedural due process...." *Ante* at page 1566.